THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SEYMOUR GARLAND, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Traffic (Downtown) Court, October 26, 1948.

*Seymour Garland*, defendant in person.

CANUDO, M. The defendant is charged with having parked his automobile in front of number 33 Roosevelt Street, in the county and city of New York, for the period from 10:25 A.M. to 12:25 P.M. on September 7, 1948, in violation of subdivision (a) of section 10 of the Traffic Regulations issued by the police commissioner under authority of section 435 of the New York City Charter. The section here in dispute provides that " No person shall park a vehicle   *   *   *   More than one hour on any street between 7 a.m. and 12 midnight ". The defendant admits having parked his car as alleged, but argues that inasmuch as Roosevelt Street, at this point, is privately owned, the officer exceeded his authority in placing an overtime ticket on the car.

It is my confirmed opinion that, even though a municipality has never acquired title to a street, and even though the street may be closed off to the public for brief periods at regular inter-

vals in order to protect the title of its true owners, it is none-theless subject to the same police regulations as any other street, whenever it is being used by the general public. Since, on September 7, 1948, this street was open to use as a thoroughfare, the regulatory measure taken by the complaining officer represented a proper exercise of his authority. I therefore find the defendant guilty as charged.

Section 435 of the New York City Charter gives to the police department the power and the duty to " regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health ". It also grants to the police commissioner the authority to " make such rules and regulations for the conduct of pedestrian and vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary ".

In the case of *Grulich* v. *Paine* (231 N. Y. 311 [1921]) the defendant in a negligence action urged that the provisions of the General Highway Traffic Law did not apply to a driveway owned by the New York Central Railroad but in common use by the public. In referring to the General Highway Traffic Law, in its opinion, the Court of Appeals said (p. 316) : " The statutes are intended to promote safety, order and convenience. The same reasons why drivers of motor vehicles should observe rules that are generally accepted and enforced in crossing streets where another street intersects or abuts, exist at the entrance of the driveway in question as if it had been dedicated to and accepted by the public."

In *Schwartzberg* v. *Wallander* (190 Misc. 236 [1947]), the authority of the police commissioner to take all necessary measures for the control of traffic was strongly supported by Mr. Justice PECORA as applying to the designation of certain streets for learners; and in *Bus Depot Holding Corp.* v. *Valentine* (288 N. Y. 115 [1942]), the Court of Appeals similarly confirmed the right of the police commissioner of New York City to take broad measures for the same purpose, and limited that right only because in the particular case before it certain interstate bus companies would have been denied the right to pass along certain streets in the midtown area of Manhattan in order to reach their terminals.

There are decisions in other jurisdictions which clearly hold that where a private owner permits the use of a street by the public, he subjects such a street to all the necessary controls which are applied to public streets. This rule is set forth in

*Crossler* v. *Safeway Stores* (51 Idaho 413, 420 [1931]), where the court said: " While, in the absence of such dedication and acceptance by the municipality, and in the absence of use by the public and work done by the municipality, there may be no liability or duty upon its part to maintain and keep in repair streets used by the public not so dedicated or accepted, nevertheless, under its police power when streets or alleys, or driveways, * * * which if properly dedicated would be accepted, are laid out, opened up and used by the public the same as other streets and alleys within the municipality, the same are subject to municipal regulation for the safety of the public."

In *Nemours* v. *City of Clayton* (237 Mo. App. 497, 510 [1943]), it was held that a certain privately owned street " by the sufferance and permission of its owners, has been allowed to become a public street * * * subject only to the right of its owners to revoke the license thus impliedly granted at any time they so elect. However, so long as the owners do not see fit to exercise their power of revocation but instead permit the street to remain open as a way or place for vehicular travel by the public, the necessity for regulation will exist in no less degree than if the street were publicly constituted and maintained; and the city, during all such time, may prescribe and enforce reasonable rules by which the privilege thus extended may be enjoyed by all the members of the general public, including the owners of the street and the proper members of their families, who must likewise be obedient to the regulations thus imposed."

In *City of Clayton* v. *Nemours* (353 Mo. 61, 66–67 [1944]) it was held: " In determining whether a way is a public or a private highway, the use to which the way is put; i.e., whether public or private, is of greater importance than its ownership, its mode of creation or its designation as public or private; because it would tend to create confusion and danger to the traveling public if privately owned highways open to and used by the general public enforced their own rules of the road, free from legitimate public regulation, upon travelers leaving the publicly owned highways and entering upon the privately owned ways * * *."

In *State ex rel. Audrain Co.* v. *City of Mexico* (355 Mo. 612 [1946]), where the point at issue was whether a municipality might, in the exercise of delegated police power, install parking meters on land owned by the county as its private property and knowingly permitted to be used as a public street, the court said p. 616): " The law of the road extends to all public

highways, de jure or de facto, embracing ways on private property if used for public travel. The necessity for regulation inherent in the use permitted gives rise to and makes the police power applicable to private land when used as a de facto public highway * * * our search has revealed [no authority] under the instant facts, taking land devoted to public use as a city street out of the police power delegated to the cities because owned by a county.''

Section 435 of the City Charter shows no intention to confine the term '' public streets '' to the narrow and technical definition of publicly owned streets, as the defendant Garland urges. There is just as much need to protect the public, with respect to traffic in the privately owned streets as in the publicly owned streets. To hold otherwise would prevent the police department from exercising the duty imposed upon it by the City Charter.