ALANDA NEMOURS AND DR. PAUL R. NEMOURS, APPELLANTS, v. CITY OF CLAYTON, A MUNICIPAL CORPORATION, ALFRED H. KERTH, MAYOR OF THE CITY OF CLAYTON, CHARLES J. TACKE, CHIEF OF POLICE OF THE CITY OF CLAYTON, AND JOHN L. LYNES, STREET COMMISSIONER OF THE CITY OF CLAYTON, RESPONDENTS.—175 S. W. (2d) 60.

St. Louis Court of Appeals. Opinion filed November 2, 1943.

498

*Keil & Keil* and *Frank Coffman* for appellants.

500

*Glen Mohler* for respondents.

502

BENNICK, C.—This is a suit for an injunction by which plaintiffs, mother and son, seek to enjoin the City of Clayton and its municipal officers from the maintenance and enforcement of certain traffic regulations at the junction of Glen Ridge Avenue with Clayton Road at a point within the territorial limits of said city. From a decree in favor of defendants dismissing plaintiff's petition, the latter appealed to the Supreme Court, which found, however, that it was without jurisdiction, and consequently ordered that the cause be transferred here. [Nemours v. City of Clayton (Mo.), 172 S. W. (2d) 937.]

The controversy in the case grows out of the status of Glen Ridge Avenue as a privately owned and maintained street in what is known as Moorlands Addition, a restricted residential area located within the corporate limits of defendant city.

Moorlands Addition, as it now exists, comprises an area of about 105 acres, and is bounded on the east by Audubon Drive; on the west by Westwood Drive; on the north by Wydown Boulevard; and on the south by Clayton Road. Audubon Drive and Westwood Drive are

only two blocks apart, and between them, and running parallel with them, is Glen Ridge Avenue, which extends from Wydown Boulevard on the north to Clayton Road on the south. Glen Ridge Avenue lies wholly within the Addition, and terminates, at either end, at its point of junction with Wydown Boulevard and Clayton Road. Between Wydown Boulevard and Clayton Road are some seven intervening streets or drives, all of which run east and west, and either intersect or connect with Glen Ridge Avenue so as to facilitate the diversion of traffic upon it.

By an original indenture under date of December 11, 1922, title to all the streets in the district laid out and platted as Moorlands Addition was vested in three designated trustees and their survivors and successors, to hold the same as joint tenants, until the death of the last survivor, for the exclusive use and enjoyment of the owners of lots in the Addition and their heirs and assigns. The trustees thus appointed were impressed with the duty of thereafter caring for and maintaining such streets, in pursuance of which they were empowered to levy assessments against the several lots in the Addition and the owners thereof, with the assessments to be apportioned in a manner specified in the instrument. They were also authorized to maintain and repair sewers, pipes, wires, and other structures upon, over, and under the streets, with the right and power to grant to any person or corporation undertaking to furnish electricity, heat, light, water, power, or gas, or any convenience for a residence district, the right to place the necessary wires, pipes, conduits, or other improvements upon, in, or under said streets, easement strips, tracts, or parcels of land.

It was expressly recited that all persons who might from time to time be owners of the lots in the Addition, together with their respective proper families, should have free access to the streets, with the right to frequent, use, and enjoy the same as places of passage, subject, however, to such reasonable rules and regulations as the trustees and the lot owners themselves might from time to time make and prescribe; and that such right of access, and the right to frequent, use, and enjoy the streets for the purpose indicated, should constitute an easement therein for the benefit of each of the lots located in the Addition, and should forever pass as appurtenant to each of the lots, subject to the right to vacate any such private street as elsewhere provided in the indenture.

Provision was made that upon the death of the last survivor of the three trustees originally designated in the instrument, title to the streets should thereupon vest in the then owners of the lots located in the Addition as tenants in common, such title to be free of the trust theretofore imposed, but subject to all the continuing easements, conditions, restrictions, covenants, and charges made applicable thereto and binding thereon. It was provided, however, that upon

504

such termination of the trust, the owners of the lots might elect to continue and perpetuate its general object and intent by adopting such reasonable rules and regulations with respect to the use and maintenance of the streets as would be consistent with the terms, conditions, and restrictions expressed in the instrument; and that for the accomplishment of such purpose they might choose and appoint agents to act for them, whose powers and duties in that capacity should be substantially the same as those of the original trustees. As a matter of fact, this very contingency had come to pass before the inception of the present controversy; and at all times involved in this proceeding, the management and control of the subdivision was vested in three agents who had been chosen from among the owners of lots in the Addition as indicated by an instrument prepared and filed of record on January 9, 1934.

Plaintiffs reside in the extreme southwestern corner of the Addition in a residence which fronts on Clayton Road on the south and abuts on Glen Ridge Avenue on the west. While the mother, Alanda Nemours, is the sole owner of the property, her son, Dr. Paul R. Nemours, resides with her as a proper member of the family within the contemplation of the above indenture; and hence it is that they are joined together as coplaintiffs in this proceeding by which they attempt to enjoin the city and its municipal officers from the maintenance and enforcement of the traffic regulations of which complaint is made.

Notwithstanding the status of Glen Ridge Avenue as a private street wholly owned and maintained by the owners of the lots in the Addition, the evidence was undisputed that save for a week or two each year when its north and south ends are closed off alternately, it is not only permitted to be open for public traffic, but indeed is extensively used for traffic, both by persons residing in the Addition, and also by those members of the general public who have business in the Addition or who may desire and have occasion to make use of such street as a thoroughfare between Clayton Road and Wydown Boulevard. In other words, so far as its use is concerned, it is to all intents and purposes a public street, and is regularly made use of by automobiles, trucks, and other vehicles, just as is true of all the other privately owned streets in the Addition. This is of course not to say that there is any actual invitation extended to the public, but only that the public is allowed to use the street with the knowledge and tacit consent of the owners of the lots and their agents so as to have amounted to an implied grant of a license for such use, subject only to the right of revocation at any time the owners may so elect. Despite the character of use allowed, there is no question but that the street remains the property of the lot owners as tenants in common; and the city expressly disavows any claim of title to the street as the authority for the regulations which it has heretofore imposed.

The evidence disclosed that not only has Glen Ridge Avenue been subject to public use since the opening up of the Addition in 1923, but that in the succeeding years as the surrounding territory became more thickly populated, its use as a traffic artery was greatly intensified, particularly during the rush hours each morning and evening. While the original indenture had restricted the character of the improvements in the Addition to private residences to be occupied by one family only, the territory lying immediately west of Glen Ridge Avenue was subsequently detached from the Addition and converted into a subdivision known as Blue Ridge Terrace, which was given over to the erection of multiple dwellings and apartments, some for as many as thirty-two families. This was said to have been the most important single factor in increasing the volume of traffic on Glen Ridge Avenue, and was shown to have resulted, along with other factors, in producing a greater burden of traffic on Glen Ridge Avenue than upon any other of the streets in the whole Addition.

Clayton Road, with which the south end of Glen Ridge Avenue joins, is a very heavily traveled public highway leading from St. Louis County into the City of St. Louis, and connecting with the express highway through Forest Park which has been built to facilitate the rapid movement of through traffic into and out of downtown St. Louis. It has also been designated as a unit of the national highway system east and west, so that it not only serves as a convenience to persons residing in the general metropolitan area of the City of St. Louis, but it is extensively used as well by all types of cross-country traffic moving through St. Louis in either direction to points on beyond.

The inevitable consequence of the situation thus presented was to create a serious traffic hazard at the junction of Glen Ridge Avenue with Clayton Road, making it extremely dangerous for motorists to turn into or off of Glen Ridge Avenue, especially when the traffic was at its peak during the morning and evening hours. Moreover, there was the question of the peril to the school children residing in the Lake Forest area south of Clayton Road, who were compelled to cross Clayton Road twice a day in going to and from the Glen Ridge· School, which is located on Glen Ridge Avenue some three or four blocks north of Clayton Road. While the Lake Forest area is outside the corporate limits of the City of Clayton, it appears that it is nevertheless within the district which is served by the Glen Ridge School.

With a view to relieving such condition, negotiations were begun in 1939 between the agents of the lot owners on the one hand and the officials of the City of Clayton on the other with respect to the installation by the city of a suitable system of automatic traffic control signals at the point of junction of Glen Ridge Avenue with Clayton Road. Because of the status of Glen Ridge Avenue as a private street, the

city officials, before undertaking to proceed, were desirous of securing an easement or grant of authority from the agents of the owners; and to this end the three regularly constituted agents, on December 2, 1939, executed an instrument in writing in which, after reciting that in their opinion a traffic hazard existed upon Glen Ridge Avenue at and near its junction with Clayton Road and that the City of Clayton had been asked to provide the necessary system of automatic traffic signals for the control of traffic at that point, they purportedly granted authority to the city to install such a system of signals, with the right to maintain and perpetually operate the same as the property of the city.

Recognizing the necessity that the authority for the grant of such an easement should be derived from the terms of the original indenture providing for the appointment of trustees and agents and prescribing their respective powers and functions, the agents sought to predicate their action in this instance upon the provision of the indenture empowering the trustees to grant to any person or corporation undertaking to furnish electricity, heat, light, water, power, or gas, "or any convenience for a residence district," the right to place the necessary wires, pipes, conduits, or other implements upon, in, or under the streets, easement strips, tracts, or parcels of land.

Defendants contend, as the evidence did indeed disclose, that the installation of the traffic control system at the point in question was a great convenience to the residents of the Addition in attempting to drive their automobiles into or off of Glen Ridge Avenue, and they insist that the convenience thus afforded them was within the fair contemplation of the grant of power in the indenture. Plaintiffs argue, on the other hand, that agents appointed under the indenture did not succeed to all the powers of the original trustees; that the easement in question, even if it had been purportedly given by vote of the lot owners themselves, would have been invalid as inconsistent with the general objects and purposes of the trust, which gave the owners the right to frequent and enjoy the streets as private streets and as means of access to their homes; and that in any event, with due observance of the rule of *ejusdem generis*, the reference in the indenture to "any convenience for a residence district" must be limited to a convenience of the same general character as electricity, heat, light, water, power, or gas, and may not be extended to include a traffic control system, however convenient such a system might actually prove to be.

Whatever may be the merits of this particular dispute, the result in the case is not dependent upon it, since the city, in defending its right to regulate traffic at the point in question, asserts the authority of the police power, and only relies upon the easement as allegedly constituting an estoppel against plaintiffs as owners to disavow the action of their agents. Consequently, as the case is presented for our determination, the chief importance of the matter is that it at

least evinces the city's complete good faith in attempting to relieve a traffic hazard which the agents themselves had recognized and had asked to be corrected.

At the conclusion of the negotiations between the city and the agents, the city began the enactment of appropriate ordinances to put the proposal into effect, and as a first step amended its general ordinance regulating traffic upon the ''public streets'' of the City of Clayton so as to define the terms ''street or highway'' to mean ''every way or place open for vehicular travel by the public, regardless of its legal status and regardless of whether it has been legally established by constituted authority or by user for the statutory period of time as a public highway.'' By subsequent enactment, the street commissioner was directed to place standard traffic signs prohibiting the stopping, standing, or parking of any vehicle ''on both sides of Glen Ridge between Clayton Road and a point 115 feet north of Clayton Road.''

The control system selected by the city is of the traffic actuated type, and consists of two signal light standards erected on either side of Clayton Road at the point of junction with Glen Ridge Avenue, which standards show green at all times for the traffic upon Clayton Road except when the wheel of an automobile on Glen Ridge Avenue, which expects to enter Clayton Road by a left turn to the east, comes in contact with a metal pad which is laid flush with the surface of Glen Ridge Avenue, and is connected with the standards on Clayton Road by underground wires or cables. Contact with the metal pad causes the lights to turn red in both directions on Clayton Road, and thereby stops traffic and permits the automobile on Glen Ridge Avenue to proceed to make its left turn without being subjected to the hazard of rapidly moving traffic on Clayton Road. For the convenience of the public, lines or markers have been placed on the surface of Glen Ridge Avenue, dividing the whole of the 26 feet of its paved width into three traffic lanes, in the center one of which has been placed the metal pad which permits the making of a left turn into Clayton Road. The east lane is used by vehicles which may at all times make a right turn from Clayton Road into Glen Ridge Avenue, while the west lane permits a right turn at all times from Glen Ridge Avenue into Clayton Road.

The chief complainant was Dr. Paul R. Nemours, who was largely aggrieved at two things, the first, the division of the entire street alongside his home into traffic lanes; and the second, the prohibition of parking along either side of Glen Ridge Avenue for a distance of 115 feet north of Clayton Road. There was no complaint about the erection of the two signal light standards on Clayton Road, which is a public street and therefore unquestionably subject to the city's supervision; nor did he complain of ''speed limit 20 miles an hour'' and ''look out for children'' signs which had been placed along the curb, not by the city, but by the agents of the subdivision.

Admitting the obvious fact that the three traffic lanes in no sense constituted a physical obstruction, it was Dr. Nemours' contention that they nonetheless obstructed the entrance to the driveway which leads into his garage, in that it was impossible for him to turn into his driveway without violating the law by entering upon the middle lane which is set apart for left turn traffic moving south. The city's answer to this was that such traffic lanes had been marked off solely for the convenience of the traveling public in driving into or off of Glen Ridge Avenue, and that Dr. Nemours would violate no ordinance in crossing over upon the center lane preparatory to turning into his driveway.

The more serious complaint was the one directed to the prohibition against parking on either side of Glen Ridge Avenue for a distance of 115 feet north of Clayton Road. It was undisputed that the establishment of such no-parking zone left Dr. Nemours with no room in which to park his car alongside the Glen Ridge Avenue side of his home, which was all the more disadvantageous and unsatisfactory to him in that there is a similar prohibition against parking in front of his home on Clayton Road at the approach to the signal light standard erected at that point. As a result, he is left with no recourse except to park in his driveway leading out into Glen Ridge Avenue, or else at a point on Clayton Road slightly east of his home, where the city has made provision for the parking of several cars in an endeavor to solve the doctor's problem as best it may with regard to the best interest of all the people. By arrangement between Dr. Nemours and the city, a test case was brought through the medium of his arrest for parking his automobile in the no-parking zone on Glen Ridge Avenue, and on the subsequent appeal of the case to this court, the validity of the ordinance was sustained. [City of Clayton v. Nemours (Mo. App.), 164 S. W. (2d) 935.]

Insisting that defendants, by their acts and conduct, were unlawfully, wrongfully, and oppressively depriving them of free access to, and the use and enjoyment of, Glen Ridge Avenue as a private street, and were threatening to deprive them of the right to enjoy Moorlands Addition as a restricted residential area, plaintiffs prayed in their petition that defendants be restrained and enjoined from operating the automatic traffic signal on Glen Ridge Avenue; from dividing Glen Ridge Avenue into traffic lanes; from marking the curbs and placing no-parking warning signs on the streets; from arresting, or threatening to arrest, plaintiffs, their guests, servants, or employees for parking their automobiles on Glen Ridge Avenue alongside plaintiffs' home; and from enforcing the ordinance heretofore referred to in so far as they purported to regulate traffic upon Glen Ridge Avenue.

It was further prayed that the court, by its decree, should compel defendants to remove from Glen Ridge Avenue the traffic pad, together with all the wires, conduits, and other accessories thereto be-

longing which had been laid in, upon, or under Glen Ridge Avenue as a part of the signal; and that defendants should be restrained and enjoined from in any way hindering or impeding plaintiffs in the full enjoyment of their residence and private street, which, by the terms of the conveyance of the property, they possessed, enjoyed, or had acquired.

As has already been indicated, defendants put their defense upon the theory that the things of which plaintiffs complained were to be justified as a valid exercise of the police power, and that in any event plaintiffs were estopped to complain of the installation and maintenance of traffic controls on Glen Ridge Avenue by reason of the action of their agents in having purportedly granted an easement to the city for such purpose.

If it be true that the steps taken by the city are to be justified as a valid exercise of the police power, it matters not whether plaintiffs might be otherwise estopped to complain, so that the case is logically to be considered from the standpoint of the fundamental question involved, which is whether, notwithstanding the private ownership and maintenance of Glen Ridge Avenue, the public use to which it has been put by the sufferance and permission of its owners warrants the city in adopting the measures it has taken for the regulation of traffic upon it.

It is at once apparent that our decision in City of Clayton v. Nemours, *supra*, has substantially determined the several questions upon which the result in the present case depends.

In that case, which involved the validity of the ordinance prohibiting parking on Glen Ridge Avenue for 115 feet north of Clayton Road, we pointed out that every citizen holds his property subject to the valid exercise of the police power, and that in the event of a conflict between his individual interests and those of society as a whole, he must subordinate his private rights to a reasonable and proper exercise of the police power for the promotion and furtherance of what is conceived to be the general welfare. So it is, we observed, that the state, when fulfilling its duty of protecting the rights and property of persons while upon or using roads within its borders, may extend its supervision to roads not duly constituted public highways if commonly used for public travel (Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065) ; and so likewise may a city, in the exercise of the power delegated to it by the State, regulate the use of vehicles or other means of transportation upon all streets and roadways which are rightfully made use of by the public within its municipal limits, regardless of their legal status. This for the reason that it is the public use to which a street is put that gives rise to the city's right and duty to regulate the movement of traffic upon it, so that if a street is in fact permitted to be made use of for the pleasure and convenience of the public at large, the character of its legal ownership will be immaterial upon the

question of its being subject to regulation and control by proper city ordinances. [Crossler v. Safeway Stores, Inc., 51 Idaho, 413, 6 Pac. (2d) 151.]

Under the undisputed evidence in this case, there can be no denying the fact that Glen Ridge Avenue, by the sufferance and permission of its owners, has been allowed to become a public street so far as the question of its use is concerned, subject only to the right of its owners to revoke the license thus impliedly granted at any time they so elect. However, so long as the owners do not see fit to exercise their power of revocation but instead permit the street to remain open as a way or place for vehicular travel by the public, the necessity for regulation will exist in no less degree than if the street were publicly constituted and maintained; and the city, during all such time, may prescribe and enforce reasonable rules by which the privilege thus extended may be enjoyed by all the members of the general public, including the owners of the street and the proper members of their families, who must likewise be obedient to the regulations thus imposed. [Commonwealth v. Gammons, 40 Mass. 201, 23 Pick. 201.]

There is no contention by plaintiffs that the measures taken by the city towards the regulation of traffic upon Glen Ridge Avenue are in and of themselves unreasonable in relation to the hazard which exists at the point of its junction with Clayton Road, but only that in view of the private ownership of Glen Ridge Avenue (disregarding all question of its public use), the assumption of control by the city amounts to an illegal taking of plaintiffs' private property and an unwarranted interference with their rights as abutting owners.

We can only repeat what was said in City of Clayton v. Nemours, *supra,* which is that the city has not in any sense taken over Glen Ridge Avenue, but that instead it is the owners themselves who have knowingly and voluntarily allowed the street to be used by the public generally so as to have given rise to the situation which necessitates the regulation of traffic upon it. The owners may of course exclude the public from it at any time they wish, and if such right of revocation is ever exercised, the city's power and duty to regulate will automatically terminate, and any ordinance to that end become at once inoperative by reason of the removal of the sole basis upon which it depends for its validity.

As for the rights of plaintiffs as abutting owners, those rights are subject to such reasonable limitations as may be necessary for the public good (Wilhoit v. City of Springfield (Mo. App.), 171 S. W. (2d) 95); and nothing which has been done by the city constitutes an unreasonable impairment of any special right which accrues to plaintiffs by reason of their position as abutting owners. The evidence establishes that there has been no interference with their right of ingress and egress to and from their property; and while the establishment of the no-parking zone alongside their property undoubtedly results in

considerable inconvenience, the circumstances nevertheless indicate that the prohibition of parking at that point is both reasonable and necessary if the regulation of traffic is to be made effective. The availability of a street for the purpose of travel is always the paramount consideration to which the right of an abutting owner to occupy or make use of it for any other purpose is necessarily permissive and subordinate.

It follows from all that has been said that plaintiffs made no case for injunctive relief; and the judgment rendered by the circuit court in favor of defendants should therefore be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.*, and *McCullen* and *Anderson, JJ.*, concur.