STATE OF MISSOURI EX REL. AUDRAIN COUNTY, MISSOURI, Appellant, v. CITY OF MEXICO, MISSOURI.—No. 39876.—197 S. W. (2d) 301.

Division Two, November 11, 1946.

J. W. Buffington and George P. Adams for appellant.

*William W. Van Matre, Jr.,* for respondent.

■■■ BOHLING, C.—The issue for determination is whether, a municipality may in the exercise of delegated police power install parking meters on that portion of land owned by a county as its private property and knowingly permitted to be used as a public

street. We answer in the affirmative. The County appeals from a decree sustaining the City's power.

The plat of the original Town of Mexico, Missouri, filed in 1836, provided for blocks of 240 feet square and streets of 60 feet in width; stating: "The 25th Block is reserved for public buildings called the public square." In addition, in 1837 Block 25 was conveyed to Audrain county, Missouri, in consideration of the location of the County Seat in said City. A courthouse was erected thereon and said Block 25 thereafter has been devoted to public purposes as a courthouse square. In 1899 the City established 50 feet as the width, from sidewalk to sidewalk, of the streets around the "square," and thereafter further widened said streets. In 1937 the existing sidewalks and pavements were laid. The County paid the portion assessed against it without objection. We understand that the improvement encroaches upon the County's land about 20 feet; and that of this 20 feet, 6 to 8 feet is the extent of the width of the street on the County's land around the "square." The portions of the streets (including the sidewalks) on the County's land for a long time have been and are now used for pedestrian and vehicular traffic. The vehicular traffic thereover is heavy and has been regulated by the City, including regulations limiting the time for parking automobiles. On October 25, 1945, the City by ordinance, established "parking meter zones" for the regulation of parking vehicles on the streets and provided for the use of parking meters in connection therewith, including the installation and maintenance of parking meters on the portions of the County's land devoted to street purposes surrounding the "square."

The County contends that as fee simple owner of the land it has the right to permit such use of its property as it desires, it having heretofore permitted the City to regulate traffic thereon in a manner acceptable to the County, to wit, regulating parking by time limits through signs; but that the City may not, without the County's consent, extend or enlarge such license or privilege.

█ Highways exist primarily for the purpose of travel and transportation, and parking thereon for any extended period is a privilege. 40 C. J. S. 244, Highways, Sec. 233. In 1812, it was stated in Rex v. Cross, 3 Campbell 224, a case involving the parking of stage coaches on a street, that: "No one can make a stable-yard of the King's highway." The highways are subject to reasonable regulation and supervision by the State in the exercise of its police power. State v. Dixon, 335 Mo. 478, 481[2], 73 S. W. 2d 385, 387[2]; Park Trans. Co. v. State Highway Comm., 332 Mo. 592, 599, 60 S. W. 2d 388, 390[5]. The State may delegate this power. 40 C. J. S., p. 240, Sec. 232; 25 Am. Jur., p. 544, Secs. 253-255.

█ Counties and cities are subdivisions of the State. They have, however, certain fundamental legal distinctions. Counties are involuntary quasi public corporations of a local nature, created by

general law and come into existence without regard to the wishes or consent of their respective inhabitants. They are not chartered corporations. They are created as a governmental agency to facilitate the administration of the laws of the State. They do not have political and legislative powers for local self-government. They have been said to rank low in the grade of corporate existence. Municipal corporations are the result of a voluntary association of the inhabitants sanctioned by the State primarily for the purpose of local self-government subordinate to the State and at the same time constituting, although secondary, an effective instrumentality for the administration of governmental affairs. A charter, defining their powers and duties, is essential to their creation and existence, which is effected upon "incorporation." Cities have been a chief factor in human progress. They exercise policy making authority and have legislative powers for their local government. It is inconsistent with the purposes of their creation that counties exercise jurisdiction over their affairs. Dual authority would tend to create confusion. This is especially true of an exercise of governmental police power. The indispensability of local self-government arises from problems implicit in the safety, order, health, morals, prosperity, and general welfare of thickly populated areas. Heller v. Stremmel, 52 Mo. 309; State ex rel. v. Leffingwell, 54 Mo. 458; Barton County v. Walser, 47 Mo. 189; Cook County v. Chicago, 311 Ill. 234, 142 N. E. 512, 31 A. L. R. 442; 20 C. J. S. p. 753, Counties, Secs. 1-3; 43 C. J. p. 72, Municipal Corporation, Secs. 11-13, p. 186, Sec. 184; p. 247, Sec. 247, nn. 73, 74. The jurisdiction of the city attaches and that of the county ceases when rural or county territory is annexed to a municipality. St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121, 133; Kurtz v. Knapp, 127 Mo. App. 608, 106 S. W. 537; 43 C. J. 142, Municipalities, Secs. 117, 120. Within its authorized sphere of action, a city has been termed "a minature state." Paulsen v. City of Portland, 149 U. S. 30, 38, 13 S. Ct. 750, 37 L. Ed. 637. This policy of government has received practical recognition by the General Assembly of Missouri.

The State of Missouri has delegated to the City of Mexico as a city of the third class authority to prevent the obstruction of its sidewalks and streets by vehicles (Sec. 6952, R. S. 1939) and, along with other cities of the State, specific authority to ". . . by ordinance, make additional rules of the road or traffic regulations to meet their needs and traffic conditions; . . . regulate the parking of vehicles on streets by the installation of parking meters for limiting the time of parking and exacting a fee therefor or by the adoption of any other regulatory method that is reasonable and practical . . ." Laws 1943, pp. 659-661, amending Sec. 8395, R. S. 1939. Said Sec. 8395 is a part of Art. I of Chap. 65, R. S. 1939. Section 8366 thereof provides in part: "This article shall be exclusively controlling on the

. . . regulation . . . of motor vehicles, their use on the public highways'' et cetera. And Sec. 8367, Id., entitled ''Definitions,'' defines ''Highway'' as: ''Any public thoroughfare for vehicles, including state roads, county roads, and public streets, avenues, boulevards, parkways or alleys in any municipality.''

The regulation of the parking of automobiles on its streets by a city is a valid exercise of the State's delegated police power. City of Clayton v. Nemours, 353 Mo. 61, 66[3], 182 S. W. 2d 57, 59[4] (appeal dismissed, 323 U. S. 684, 89 L. Ed. 554, 65 S. Ct. 560); City of Clayton v. Nemours, 237 Mo. App. 167, 180, 164 S. W. 2d 935, 942[16]; Nemours v. City of Clayton, 237 Mo. App. 497, 509, 175 S. W. 2d 60, 65[1, 2]. This is also true of such regulation by means of parking meters. Wilhoit v. City of Springfield, 237 Mo. App. 775, 784, 786, 171 S. W. 2d 95, 98[2, 9]. Additional authorities are cited in Bowers v. City of Muskegon, 305 Mich. 676, 9 N. W. 2d 889; Cassidy v. City of Waterbury, 130 Conn. 237, 33 Atl. 2d 142; Hickey v. Riley (Ore.), 162 Pac. 2d 371; Kimmel v. City of Spokane, 7 Wash. 2d 372, 109 Pac. 2d 1069; Annotations, 130 A. L. R. 316; 108 A. L. R. 1152, 72 A. L. R. 299. The instant record presents no issue that the ordinance before us is aught but a valid exercise of the police power of the City of Mexico.

As previously ruled in this State: The law of the road extends to all public highways, de jure or de facto, embracing ways on private property if used for public travel. The necessity for regulation inherent in the use permitted gives rise to and makes the police power applicable to private land when used as a de facto public highway. City of Clayton v. Nemours, 353 Mo. 61, 66[4], 182 S. W. 2d 57, 60[7-9]; City of Clayton v. Nemours, 237 Mo. App. 167, 177 et seq., 164 S. W. 2d 935, 940[11-13, 15, 16]; Nemours v. City of Clayton, 237 Mo. App. 497, 509, 175 S. W. 2d 60, 65. We need not repeat what is there stated. Counties have not been delegated authority to regulate traffic over city streets within their boundaries. We are cited to no authority, and our search has revealed none under the instant facts, taking land devoted to public use as a city street out of the police power delegated to cities because owned by a county. State ex rel. Jump v. Louisiana, Bowling Green & Ashley Gravel Road Co., 116 Mo. App. 175, 92 S. W. 153, the only authority cited by the County, is not on this issue.

Here the County seeks to thwart the exercise of a high governmental prerogative by interposing rights in land of a proprietary nature which it has released to such an extent as to require the regulation involved. It is the police power of the State (to which counties and cities alike are subservient) exercised by the authorized agent of the State, the City, and not the police power of the City, that the County

attacks. This it may not successfully do so long as it permits the user requiring the regulation.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.