335 F.Supp. 899 (1971)
The PARK VIEW HEIGHTS CORPORATION et al., Plaintiffs,
v.
The CITY OF BLACK JACK et al., Defendants.
No. 71 C 15 (A).
United States District Court, E. D. Missouri, E. D.
December 21, 1971.
*900 Samuel Liberman and Richard Baron, St. Louis, Mo., Jerry Pratter, Clayton, Mo., Melvin L. Wulf and Lawrence G. Sager, American Civil Liberties Union Foundation, New York City, for plaintiffs.
Roy W. Bergman, Sheldon K. Stock, Clayton, Mo., for defendants.

MEMORANDUM AND ORDER
HARPER, District Judge.
This is an action pursuant to 28 U.S. C. § 1343(3) and (4), in conjunction with the Fifth, Thirteenth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1982, 1983, 2000d and 3617, against the City of Black Jack, Missouri, the members of the Black Jack City Council, the members of its Zoning Commission, its mayor and chairman of the Zoning Commission, in their official capacity, and as individuals. The plaintiffs are two not-for-profit corporations, the Park View Heights Corporation and the Inter-Religious Center for Urban Affairs, Inc. *901 (hereinafter referred to as ICUA), and several individual plaintiffs purporting to represent the class of "lower and moderate income families, confined by economic and/or racial circumstances to the City of St. Louis and eligible for residence in Park View Heights."
From oral argument and an examination of the briefs and plaintiffs' inartfully drawn complaint, the court has concluded that the plaintiffs' claims fall into two categories: First, that the zoning ordinance of the City of Black Jack arbitrarily and irrationally excludes provisions for the erection of multi-family dwellings within the city, resulting in a drastic devaluation of the proposed site of the Park View Heights development in violation of the Fifth and Fourteenth Amendments; and second, that the purpose and effect of the zoning ordinance is to prohibit moderate and lower income persons, including members of the Negro race who do not even reside in St. Louis County, from moving into Black Jack in violation of their right to travel, the equal protection clause of the Fourteenth Amendment, the supremacy clause, the Thirteenth Amendment, the Civil Rights Act of 1866 (42 U.S.C. §§ 1981 and 1982), the Civil Rights Act of 1964 (42 U.S.C. 2000d), the Fair Housing Act of 1968 (42 U.S.C. 3601 et seq.), and the National Housing Act (42 U.S. C. 1401 et seq.).
The matter is now before the court on multiple motions by the several defendants. For purposes of these motions, the facts may be described as follows: In December, 1969, the ICUA acquired an option to purchase a parcel of land in an unincorporated portion of St. Louis County in furtherance of a plan to develop a federally assisted housing project. The Park View Heights Corporation, comprised of several religious entities and incorporated on August 13, 1970, was formed by the ICUA to effectuate this development. ICUA thereafter assigned its option to purchase the property in question to Park View Heights Corporation, who on September 8, 1970, acquired title as shown by photostatic copies of deeds furnished to the court. In June, 1970, Park View Heights Corporation received a contingent commitment of federal funds from the Department of Housing and Urban Development. When ICUA obtained its option to purchase this property, the zoning ordinance of St. Louis County applicable to this land permitted the construction of multiple-family housing. On June 25, 1960, members of the area of St. Louis County, now constituting the City of Black Jack, filed a petition for incorporation with the St. Louis County Council. The city was thereafter incorporated, and on August 7, 1970, began functioning as a municipality. On October 20, 1970, the City of Black Jack enacted the zoning ordinance which plaintiffs claim is unconstitutional. The ordinance zoned an area including the parcel of land owned by the Park View Heights Corporation to permit only single family dwellings.
When the City of Black Jack enacted its zoning ordinance, it did not, as the plaintiffs state, "rezone" the Park View Heights property. The incorporation of territory formerly part of a county is similar to the situation in which an area is annexed to a municipality. In State ex rel. Audrain County v. City of Mexico, 355 Mo. 612, 197 S.W.2d 301, 303 (1946), the Missouri Supreme Court said:
"The jurisdiction of the city attaches and that of the county ceases when rural or county territory is annexed to a municipality. St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 121, 133; Kurtz v. Knapp, 127 Mo.App. 608, 106 S.W. 537; 43 C.J. 142, Municipalities, Secs. 117, 120."
Courts have repeatedly held that any territory upon being annexed by a city goes into the city with the status of unzoned property regardless of what zoning status it occupied before annexation. See i. e., Louisville & Jefferson County P. & Z. Comm. v. Fortner, 243 S.W.2d 492, 494 (Ky.Ct.App.1951); Incorporated Village of Muttontown v. Friscia, 60 *902 Misc.2d 1014, 304 N.Y.S.2d 664, 670 (N. Y.1969); Taylor v. Bowen, 272 N.C. 726, 158 S.E.2d 837, 839 (1968). It follows that the effect of the Black Jack ordinance was to "zone", not "rezone", the property in question.
In order to properly consider the motions to dismiss the court must determine which plaintiffs have standing to raise the questions which are ultimately to be decided in this case. The standard enunciated by the Supreme Court to test a party's eligibility for relief, and recently applied by the Eighth Circuit in Nebraska State AFL-CIO v. Nebraska, 445 F.2d 1333, is whether he has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663. This test was again reiterated by the Supreme Court in Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947, wherein more helpful guidelines for determining standing were enunciated:
"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wish[ed] to have adjudicated." (l.c. 99, 88 S.Ct. at 1952)
"Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are esential to assure that he is a proper and appropriate party to invoke federal judicial power." (l.c. 102, 88 S.Ct. at 1953)
Applying the above standards to this litigation, the court finds that only the Park View Heights Corporation has standing to raise plaintiffs' first claim, that the zoning ordinance is arbitrary and irrational and results in a taking of property without just compensation. Of the plaintiffs before this court, Park View Heights alone has a personal stake in the determination of this controversy, since it holds title to the land allegedly devaluated by the zoning restrictions. Although ICUA initially obtained an option to purchase the property whose value is at stake, it has since relinquished this option and fails to allege any retained interest. The individual plaintiffs representing the class are not personally harmed by the devaluation of the property. Albeit the class is a potential beneficiary should the building be erected, this is another question unrelated to a taking of property in violation of the Fifth and Fourteenth Amendments. There is no nexus between ICUA and the individual plaintiffs' nonproprietary status and the claim of loss of property by an arbitrary and irrational use of police power.
If any of the plaintiffs have standing to raise the second federal question before this court, that the purpose and effect of the zoning ordinance is to exclude persons of moderate and/or lower income, including Negroes, from the City of Black Jack, clearly it is not Park View Heights Corporation or ICUA. These not-for-profit corporations are composed entirely of religious bodies, and as a legal entity are not persons allegedly excluded from living in Black Jack. Neither do these two plaintiffs allege to be, nor would their membership qualify them as proper representatives of the lower or moderate income persons allegedly prohibited from moving into that city. In this part of the complaint, Park View Heights and ICUA have not alleged a violation of their own constitutional rights. "A federal court will not pass upon the validity of a state statute on complaint of those who fail to show injury by its enforcement (citing cases)." Gilmore v. James, D.C., 274 F.Supp. 75, 87, aff'd 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783. See also, United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524. As to this claim, these plaintiffs fail to allege any "personal stake in the outcome of the controversy."
We now turn to defendants' motion to dismiss for lack of jurisdiction. "[T]he *903 judicial power of federal courts is constitutionally restricted to `cases' and `controversies.'" Flast v. Cohen, supra, 392 U.S. 94, 88 S.Ct. 1949.
In Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464, 81 L.Ed. 617 the Supreme Court has compiled the following list of definitions used by that court to determine the existence of a "controversy":
"A `controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."
The Supreme Court recently stated again in Thorpe v. Housing Authority, 393 U.S. 268, 284, 89 S.Ct. 518, 527, 21 L.Ed.2d 474:
"We do not sit, however, `to decide abstract, hypothetical or contingent questions * * * or to decide any constitutional question in advance of the necessity for its decision.' Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461 [65 S.Ct. 1384, 89 L.Ed. 1725.]"
Park View Heights Corporation's claim seeking redress for a taking of property by an arbitrary and irrational enactment of a zoning ordinance is timely brought. The Supreme Court decided in Euclid Ohio v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303, that an action by a landowner attacking an ordinance which of its own force operates greatly to reduce the value of land owned by him and to destroy its marketability for specific uses is not premature.
Assuming, but not deciding that the individual plaintiffs bringing this class action have standing to attack this local ordinance, unlike the Park View Heights Corporation who may be immediately injured by the zoning ordinance, this class seeks relief where no case or controversy has yet arisen.
This ordinance on its face does not prohibit moderate or lower income families including blacks from owning or residing in any of the type structures permitted under this zoning law; therefore, of its own force this enactment does not prohibit this class from residing in the City of Black Jack. This court can find no civil rights case in which a court has entertained jurisdiction of a complaint attacking a zoning ordinance, nondiscriminatory on its face prior to its unconstitutional use. Plaintiffs make no allegation that defendants in reliance on this ordinance have prohibited the construction of a building with the effect or intent of prohibiting members of this class from residing in Black Jack. The defendants have never refused to consider rezoning of the site of the Park View Heights development, or refused to issue a building permit, nor have they stopped anyone while erecting a building on this site. This is not a question of exhaustion of remedies, as the plaintiffs' arguments assume, but is rather a situation in which there has been no conflict between the rights of individual plaintiffs and the actions of the defendants, giving rise to a real and substantial controversy. Defendants have not by merely enacting this ordinance denied any members of this class their constitutional rights.
It would be purely advisory to adjudicate this claim prior to the occurrence of contingent events necessary for injury to be realized. "[N]o justiciable controversy is presented * * * when the parties are asking for an advisory opinion, * * * and when there is no standing to maintain the action." Flast, *904 supra, 392 U.S. at 95, 88 S.Ct. at 1950. This court will not entertain jurisdiction of questions which are abstract, hypothetical and contingent such as the one before it. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, supra; Thorpe v. Housing Authority, supra; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784.
On the basis hereinabove set forth, the defendants' motion to dismiss as to the plaintiffs, the Inter-Religious Center for Urban Affairs, Inc., and the individual plaintiffs, Barbara Bates, Nancy Billings, Robert Billings, Charlotte French, Jose French, Kermit Guy, Ella Mae Johnson and Raymond Johnson, is sustained.
The motion to dismiss as to the Park View Heights Corporation is sustained as to all issues except its claim seeking redress for a taking of property in violation of the Fifth and Fourteenth Amendments by an alleged arbitrary and irrational enactment of a zoning ordinance.