STATE of Missouri, ex rel., and William S. RHODES, et al., Plaintiffs-Respondents (Cross-Appellants),

v.

CITY OF SPRINGFIELD, Springfield, Missouri, et al., Defendants-Appellants,

and

STATE of Missouri, ex rel., and William S. RHODES, et al., Relators-Respondents, (Cross-Appellants),

v.

William E. ROBINETT, et al., Respondents-Appellants.

Nos. 13039, 13049.

Missouri Court of Appeals, Southern District, Division One.

May 9, 1984.

Motion for Rehearing or to Transfer Denied June 1, 1984. Application to Transfer Denied July 17, 1984.

Howard C. Wright, Jr., City Atty., Springfield, for defendants-appellants.

Royal M. Miller, Springfield, for plaintiffs-respondents (cross-appellants).

FLANIGAN, Presiding Judge.

Doubt concerning whether the north portion of Airwood Drive was a "street" gave rise to two civil actions which were consolidated and tried, without a jury, before Honorable Jack A. Powell, Judge of Division I, Circuit Court of Greene County.

In 1978 the owners of Lots 25, 26, and 27 in Cherrymill Subdivision, an addition to the City of Springfield, desired to build a new house on each of the three lots. The owners obtained building permits from the appropriate city officials and commenced construction. A few days later, the city's Director of Building Regulations issued a "stop work order." Unable to obtain relief from the stop work order from the Board of Adjustment of the City of Springfield, or from the city council, the owners instituted the two actions in the circuit court. The first action is a certiorari proceeding against the five members of the Board of Adjustment. The second action is an injunction proceeding in which the defendants are Springfield and various city officials.

In 1956 Cherrymill Subdivision was surveyed and platted and the plat was recorded in Greene County. At that time the subdivision was east of, and outside, the city limits of Springfield. The subdivision contained two north-south streets—Prince Lane and Airwood Drive. Airwood Drive is one block west of Prince Lane. The third street in the subdivision is Cairo Street which runs east and west. Both Airwood Drive and Prince Lane cross Cairo Street and continue past the south line of the subdivision. In 1964 Cherrymill Subdivision was annexed by Springfield.

The crucial inquiry is the legal status of that portion of Airwood Drive which lies north of Cairo Street. That portion will be referred to as "the north portion."

The three lots are contiguous and they lie, generally, at the northeast corner of the intersection of Airwood Drive and Cairo Street. Lot 26 is rectangular and is the corner lot, abutting both the north portion and Cairo Street, with its frontage on the north portion being the longer side of its rectangle. Lot 25, which adjoins Lot 26 on the east, abuts Cairo Street. Lot 27, which adjoins Lot 26 on the north, abuts the north portion.

The stop work order set forth the following reasons for its issuance: (1) the north portion is not a street as required by the city's Zoning Ordinance; (2) even if the north portion is a street, it does not extend "primary means of access" to the three lots because the north portion has not been improved as required by the Zoning Ordinance; (3) even if the north portion is a street, the city charter and the Subdivision Ordinance of the city will not permit [the owners] to improve the north portion "except to standards established by the city."

Those standards include curbing and guttering.

The owners challenged the stop work order by filing, with the Board of Adjustment, an appeal from its issuance and an "alternative request for variance." In their application to the board the owners stated that they were willing to improve the north portion to a stated extent. After an evidentiary hearing the board denied both the appeal and the request for variance.

The owners then filed the certiorari proceeding in the circuit court and requested that the record of the proceedings before the board be certified to the court so that the court could adjudicate the legality of the board's action. The owners also filed the injunction action seeking an order restraining the injunction defendants from interfering with the construction of the new houses on the three lots and from

cancelling the building permits previously issued to the owners.

After directing its writ of certiorari to the board and receiving the board's record the court heard evidence at a consolidated trial and rendered a judgment which was entered in both actions. That judgment, in essence, reversed the decision of the board and permitted the owners to build the houses after the owners had improved the north portion "to the same street standard as exists on Airwood Drive south of Cairo Street, said standard being 'graded street with chip and seal surface.'" The judgment discharged the city from any duty to maintain the street improvements made by the owners. Before proceeding with construction of the houses the owners were required to complete the improvements of the north portion or post a sufficient bond that they would do so.

Both sides to the two actions appeal to this court. Defendants in both of the actions below will be referred to as "the city." The appeals will be considered in this order: the city's appeal in the certiorari action, the city's appeal in the injunction action, the owners' appeals in both actions.

## CITY'S APPEAL IN THE CERTIORARI ACTION

The city's first point is that the trial court erred in holding that there had been a common law dedication of the north portion because that holding was contrary to § 82.190[1] and various provisions of the Springfield City Charter. Specifically, the city argues there was no such dedication because there was no clear showing that the city accepted the north portion.

In its findings, which were incorporated in the judgment, the trial court stated that there were "very few" facts in dispute and the "problem is one of applying the law to the facts." Among the findings of the trial court, fully supported by the record, are

**1.** Sec. 82.190 provides, with respect to "constitutional charter cities," that "such city shall have exclusive control over its ... streets ..." Springfield is a "constitutional charter city."

All references to statutes are to RSMo 1978, V.A.M.S.

those set forth in the next seven paragraphs.

In 1956 one Holt owned certain land in Greene County east of the city limits of Springfield. Holt improved the land by having it surveyed and platted. The plat, known as "Cherrymill Subdivision," was duly executed, acknowledged and filed in 1956 in the Greene County recorder's office. The plat numbered and described the lots and delineated three streets and utility easements. The three streets were Prince Lane, Airwood Drive, and Cairo Street, all of which have been mentioned earlier in this opinion. The plat and the restrictions which were recorded with it recited that the streets were dedicated to the public.

After the plat was filed Holt improved the three streets by grading, ditching, and surfacing them with some type of material. Prince Lane was covered with a "chip and seal" surface, both in the subdivision and in that portion of Prince Lane which extends south of the subdivision. Cairo Street was covered with "dirt and gravel" and so was Airwood Drive. After the north portion was treated with dirt and gravel and was ready for an oil seal, the seal was not applied because a nearby landowner "did not want it covered with oil."

In 1964 Cherrymill Subdivision was annexed by the city. Although city records for 1964 reflected that "chip and seal" was to be placed all along Airwood Drive, including the north portion, the city did not maintain the north portion. The north portion was "perhaps overgrown with grass" in 1964, but "there was a physical street there." The city did maintain, in the subdivision, the rest of Airwood Drive and Prince Lane and Cairo Street. After annexation the city issued a number of building permits for the construction of new houses on both Prince Lane and that portion of Airwood Drive lying south of Cairo. The recipients of those permits were not required to construct curb and gutters or otherwise improve the abutting street.

After annexation of the subdivision, Airwood Drive, including the north portion, was shown on "the official map" of the city, on the city "zoning maps," and on the map used for assignment of house numbers.

In 1979 the city condemned a portion of Cherrymill Subdivision, including six lots owned by the plaintiffs. Those six lots lie at the north end of the north portion, five of them on the east side and the sixth on the west side of the north portion. The city provided the condemnation defendants, who are the instant owners, with a map showing the portion of their property being taken. All of Airwood Drive was shown on that map. Although the north end of the north portion was taken, the owners were not paid any compensation for that north end but were paid for the land taken from the six lots.

In 1981 Mark Young, a graduate engineer with considerable experience in street design, drove his "Jeep" the entire length of the north portion. There had been no maintenance of the north portion for a number of years and some of it was grown over with grass, weeds, and small trees. The trees were north of the three lots. An expert witness for the city testified, with respect to the north portion, that "probably 10 or 15 years ago something was there ... but we never maintained that public right-of-way." A culvert, of the "tin whistle" type, permitted entry onto the north portion from Cairo Street.

The owners offered to improve the north portion but the city refused permission unless the north portion was "curbed and guttered." No streets in the subdivision have been curbed and guttered, although the city has improved all of the streets in the subdivision except the north portion.

■ The city's contention is that it has not "accepted" the north portion. The trial court's finding, however, that the north portion was a street by reason of a common law dedication, is supported by the record. The conduct of the city in accepting and maintaining Prince Lane, Cairo Street, and the rest of Airwood Drive, constituted an acceptance of all of the streets marked on the plat, including the north

portion, *Town of Otterville v. Bente*, 240 Mo. 291, 144 S.W. 822, 824[2] (1912); *Heitz v. City of St. Louis*, 110 Mo. 618, 19 S.W. 735, 736 (1892); Anno. 32 A.L.R.2d 953 (Dedication: acceptance of some streets, alleys, and the like appearing on plat as acceptance of all); see also McQuillen, Mun.Corps. (3rd Ed.Rev.), Vol 11, § 33.57, p. 784, at least, as here, in the absence of evidence that the city, "in its ordinance of annexation or otherwise, has excluded and rejected the designated public ways as public streets." *Weakley v. State Highway Commission*, 364 S.W.2d 608, 612[5–7] (Mo.1963).

In *Heitz*, supra, the issue was whether a city had accepted a portion of Kosciusko Street which, together with Dorcas Street, was shown on a defective plat. In holding that the city had accepted Kosciusko Street, although only a portion of it was actually used by the public for the purpose of travel, the court said, "the city, by accepting, building, and using Dorcas Street as platted, must be regarded as accepting the whole tract platted, and not as barely (sic) accepting such portion of the platted district as the city chose to improve, and did improve."

Similarly, in *City of Caruthersville v. Huffman*, 262 Mo. 367, 171 S.W. 323 (1914), it was held that the city had accepted a platted area by opening and improving the streets shown thereon and that this acceptance included an alley although the alley itself was not opened or improved.

The case at bar has additional evidence reflecting the city's acceptance of the north portion. The conduct of the city in 1979, in the condemnation proceeding, shows the city's recognition of the north portion as a street.

■ There is no merit in the city's position that the trial court's finding of a common law dedication, including its element of acceptance by the city, is contrary to § 82.190 mentioned in footnote 1. The presence of a similar statute (now § 88.670, par. 3) with respect to fourth class cities

was no bar to the holding in *City of Caruthersville*, supra, where the latter statute was specifically mentioned. Indeed the conduct of the city in improving and maintaining all the streets in Cherrymill Subdivision other than the north portion, and in refraining from those activities with respect to the north portion, was itself an exercise of the city's powers under § 82.-190.

The city argues that the ruling of the trial court "thrusts" public ownership of the north portion upon the city. It was, however, the city's own conduct which gave rise to its acceptance of the north portion.

■ The general rule is that the city has "complete discretion and control as to the time and manner of improving the street," *Wolf v. Miravalle*, 372 S.W.2d 28, 34[6] (Mo.1963); *Mitchell v. City of Everton*, 655 S.W.2d 864, 867 (Mo.App.1983). Except for the factor mentioned in the discussion of the city's fourth point, nothing in the trial court's ruling is in conflict with that principle. The trial court made no order requiring the city to improve the north portion. Indeed the judgment recited that the city had no duty to maintain any improvements to the north portion constructed by the owners. The city's first point has no merit.

■ The city's second point is that the trial court's finding that the city had accepted the north portion is contrary to the provisions of § 89.300–§ 89.490. Specifically the city relies on § 89.460 which provides, in pertinent part: "Upon acceptance of a major street plan and subdivision regulations, the municipality shall not accept ... any street ... unless the street has received the legal status of a public street prior to the adoption of a city plan; *or unless the street corresponds in its location and lines with a street shown on a subdivision plat approved by the council or planning commission or on a street plan made by and adopted by the commission ...*" (Emphasis added.) The city also cites § 89.470 set out marginally.[2]

**2.** Sec. 89.470 reads: "After the adoption of a   major street plan, no building permit shall be

The city's argument proceeds upon the assumptions that § 89.460 applies to constitutional charter cities such as Springfield and to the instant facts. It is unnecessary to rule on the soundness of those assumptions because, even if § 89.460 applies here, the north portion "corresponds in its location and lines with a street shown on a subdivision plat approved by the council." Such a plat is contained in the record as owner's Exhibit 8. The city's second point has no merit.

The city's third point is that the trial court erred in "substituting its judgment for that of the board" and in "conducting a de novo hearing" because the decision of the board was supported by competent and substantial evidence and the trial court's review was "contrary to the provisions of § 89.110."

Sec. 89.110 deals, generally, with the certiorari procedure in the circuit court which may be invoked by any person aggrieved by any decision of the Board of Adjustment or any officer of the city. Under that statute, when the circuit court directs a writ of certiorari to the board and prescribes the time within which the board must make a return thereto, the return must supply "the original papers acted upon" by the board or "certified or sworn copies thereof" or "of such portions thereof as may be called for by the writ," and "shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified." The statute then reads:

"If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which a determination of the court shall be made."

In *Rosedale-Skinker Imp. Assn. v. Board of Adjustment,* 425 S.W.2d 929, 936[8] (Mo. banc, 1968), the court said, "The scope of judicial review of the decisions of the board of adjustment in a zoning proceedings is limited to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." It is pointed out in *State ex rel. Rabenau v. Beckemeier,* 436 S.W.2d 52, 56 (Mo.App.1968), that the scope of judicial review of a board of adjustment includes, but "is not limited solely to," a determination of whether the board's decision is supported by competent and substantial evidence upon the whole record. The other ground of review is the legality of the board's decision and if the board exceeds the authority granted to it, "a court on review may, and should, hold the Board's decision to be illegal and void." Ibid, p. 56.

In *Hart v. Bd. of Adj. of City of Marshall,* 616 S.W.2d 111 (Mo.App.1981), the court, referring to the language in § 89.110 concerning the taking of "additional evidence" in the circuit court, quoted with approval the following language from *State v. Ladue Professional Building, Inc.,* 395 S.W.2d 316 (Mo.App.1965):

"We do not think this was meant to change the nature of the hearing from one of review to one de novo on the merits. Instead, we think it was intended only to allow further evidence that touches upon the procedural legality of the hearing before the Board." See also *State ex rel. Ellis v. Liddle,* 520 S.W.2d 644, 646[1–2] (Mo.App.1975).

On the other hand, the statute itself permits taking additional evidence of some type and the supreme court has said: "[U]nder [§ 89.110] the reviewing court is not confined to the record made before the board of adjustment and can hear further evidence and render a new judgment...." *State ex rel. Monsey-Feager/Rouse—*

issued for and no building shall be erected on any lot within the territorial jurisdiction of the commission unless the street giving access to the lot upon which the building is proposed to be placed conforms to the requirements of section 89.460."

*Waites v. McGuire,* 510 S.W.2d 449, 452[2] (Mo. banc 1974).

In the certiorari proceeding the circuit court had before it the record of the proceedings before the board which included the testimony of several witnesses and, as described in the board's return to the writ, "papers and files of said board." The latter included Exhibits A through N in the variance proceeding and Exhibits A through C in the appeal proceeding. Many of those exhibits were multiple exhibits. The circuit court did hear the testimony of several witnesses. The record does not reflect that the city objected to any evidence in the circuit court on the ground that it had not been previously presented to the board or that it did not qualify as "additional evidence" which the court could receive under § 89.110. At no time did the city request that certain evidence be limited to the injunction action.

It is not the function of this court to determine the nature of the "additional evidence," if such there was, which was taken by the circuit court and compare it with the extensive record of the proceedings before the board. The brief of the city makes no effort to set forth specifically what evidence, if any, was received by the circuit court which was not presented to the board. In the absence of such a showing by the city, this court cannot determine whether the circuit court may have transcended the limits of "additional evidence" permitted by § 89.110. It should be added that this court's examination of the record on appeal, considered in light of the six briefs of the parties, confirms the observation of Judge Powell that there were "very few" facts in dispute, indeed if any. The city's third point has no merit.

The city's fourth point is that the trial court erred in lifting the stop work order and in allowing the owners to build a street on the north portion without curbs and gutters because such order violates § 82.-190 and certain provisions of the Springfield charter which "grant the city exclusive control over public streets."

What the owners sought, and what they initially received, were building permits to construct the houses. The houses would conform fully with the housing regulations. In seeking the building permits, and in resorting to the circuit court to obtain their reissuance, the owners were not requesting leave to violate the zoning regulations.

The city, in issuing the stop work order, sought to condition reissuance of the building permits upon the owners' improving the north portion by installing curbs and gutters. No such conditions had been imposed in the issuance of building permits for the other houses in the subdivision and none of the streets in it has curbs or gutters.

The arbitrary and unreasonable application of zoning ordinances is a subject for judicial inquiry, *Despotis v. City of Sunset Hills,* 619 S.W.2d 814, 820 (Mo.App. 1981), and "the circuit court is not bound by an arbitrary or capricious action of the board, or where there has been a manifest abuse of discretion." *Veal v. Leimkuehler,* 249 S.W.2d 491, 496 (Mo.App.1952). See also *State v. Wind,* 337 S.W.2d 554, 559 (Mo.App.1960). In imposing upon the owners conditions for the permits which were not imposed upon others similarly situated, the city acted arbitrarily, capriciously, and discriminatorily.

The city is correct, however, in asserting that the owners should not be permitted, at their own expense, to improve the north portion, that is the street itself, unless it satisfies the city's standards with respect to curbs and gutters. The city does have exclusive control of its streets. § 82.190.

"[A]n abutting owner has the same right to the use of the street that the public has, and, in addition he has the special right of ingress and egress.... Be that as it may, the right of the abutter is subject to the power of the city to regulate and control its public streets ... so long as the regulations do not unreasonably interfere with his rights." *Wilhoit v. City of Springfield,* 237 Mo.App. 775, 171 S.W.2d 95,

98[5] (1943). See also *Nemours v. City of Clayton,* 237 Mo.App. 497, 175 S.W.2d 60, 66 (1943). "Ordinarily, private individuals or corporations have no right to construct highway improvements without the permission of the governing public authorities.... The work must be done in substantial accordance with the requirements of such authorities or those prescribed by the ordinance directing the improvement to be made." 39 Am.Jur.2d Highways, etc. § 76, p. 463.

The city's fourth point is valid in part. The trial court did not err in lifting the stop work order but the trial court did err in allowing the owners to improve the north portion without complying fully with the street standards prescribed by the city ordinance.

### CITY'S APPEAL IN THE INJUNCTION ACTION

The city contends that the trial court erred in not dismissing the injunction action for the reason that the owners had an adequate remedy at law under the provisions of § 89.090–§ 89.110 and the owners had not exhausted that remedy at the time the injunction action was filed, and in fact were pursuing it in the certiorari proceeding,

"As a general rule in zoning cases '[a]n adequate administrative remedy must be exhausted before a court may give injunctive or declaratory relief....' *Westside Enterprises, Inc. v. City of Dexter,* 559 S.W.2d 638, 640 (Mo.App.1977)." *City of St. Ann v. Elam,* 661 S.W.2d 632 (Mo.App. 1983).

The owners' petition, in the injunction action, pleaded that they had "initiated an appeal of the stop work order before the board of adjustment and sought, in the alternative, a variance to the strict requirement of the city for curb and gutters." The petition stated that the board denied the appeal and the variance.

Under § 89.090 the board of adjustment has the power to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of zoning ordinances. The same statute gives the board the power to reverse, affirm in whole or in part, or modify the order appealed from. Under § 89.110 the circuit court, in the certiorari proceeding, may reverse or affirm, wholly or partly, or may modify the decision of the board which is brought up for review.

■ The withdrawal of the stop work order and the reissuance of the building permits are all the relief to which the owners are entitled and that relief may be afforded in the certiorari proceeding. It follows that the owners were not entitled to injunctive relief and that action should have been dismissed.

### THE OWNERS' APPEAL

■ The only contention advanced by the owners is that they were entitled to reissuance of the building permits and that the trial court erred in making the reissuance of the building permits conditional upon the owners making certain improvements in the north portion. The improvements required by the trial court were beyond those which the owners had volunteered to make but below those required by the city standards. On this record the owners were entitled to reissuance of the building permits without any condition imposed upon them with respect to the making of street improvements. If they elect to make said improvements, they must do so only with the consent of and to the standards prescribed by the city.

Those portions of the judgments which are consistent with this opinion are affirmed; inconsistent portions are reversed and the causes are remanded for entry of new judgments consistent herewith. It is so ordered.

GREENE, C.J., and TITUS and CROW, JJ., concur.