**Jack O. EUBANKS, Respondent,**

v.

**BOARD OF ADJUSTMENT, KIRKWOOD, Missouri, Appellant.**

**No. 54567.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 25, 1989.

John M. Hessel, Lewis & Rice, Mary B. Schultz, St. Louis, for appellant.

John J. Fitzgibbon, St. Louis, for respondent.

HAMILTON, Judge.

The Board of Adjustment of Kirkwood, Missouri (hereinafter cited as the Board) appeals the judgment of the circuit court reversing the Board's decision that interpreted the Kirkwood zoning ordinance as it applied to the property of Respondent Jack O. Eubanks and ordering the building commissioner to issue a permit. We reverse.

Jack O. Eubanks owned a service station at 301 North Kirkwood Road in the City of Kirkwood, Missouri. The site had been used as a service station continuously for approximately forty years. In 1986, Eubanks began negotiating with Southland Corporation to convert his property into a 7–Eleven convenience store with gasoline pumps in front. Eubanks proposed to remodel the existing building, adding approximately three hundred square feet to the existing twenty-two hundred square feet. In addition, he planned to relocate the gasoline pumps, upgrading them from old to new fiberglass and converting the three gasoline tanks from metal to fiberglass tanks.

On December 3, 1986, Eubanks, through his agent John P. King, applied to the City of Kirkwood for a special use exception, under the category of service station, for his property at 301 North Kirkwood Road.

By letter dated June 2, 1987, Eubanks wrote Rosalind Williams, a Kirkwood city planner, to request a "legal interpretation" of the planning and zoning ordinance. Suggesting that his property at 301 North Kirkwood Road had been erroneously classified as a "legal nonconforming use" rather than a "conforming use," Eubanks wrote that, if the latter classification were

correct, he would amend his application accordingly with the City of Kirkwood.

On June 10, 1987, the attorney for the City of Kirkwood responded by letter to Eubanks' request. He advised that under Article IX, Section 1(d) of Appendix A to the Kirkwood Code of Ordinances, certain nonconforming uses were deemed to be "conforming uses," but not permitted uses. The attorney further advised that, because the operation of Eubanks' service station was not a permitted use, any expansion of it required a special use procedure.

By letter dated June 11, 1987, John P. King requested the Planning and Zoning Commission to withdraw the application for special use permit, with respect to the service station at 301 North Kirkwood Road, and to take no further action on the application for special use permit.

On June 30, 1987, Eubanks informed the City of Kirkwood that John P. King was no longer his agent and that he was awaiting a planning and zoning decision on his application. He further advised that, because certain facts indicated his property was a "conforming use," a special use permit might be unnecessary to accomplish his purpose.

Kenneth Yost, the Public Works Director of the City of Kirkwood, on June 30, 1987, informed Eubanks that John King had, on June 11, 1987, formally withdrawn the application for a special use permit and, therefore, the City of Kirkwood would take no further action on it.[1] Eubanks was further advised that he could submit a new application to the Planning and Zoning Commission for a special use permit at 301 North Kirkwood Road. Frank Young, the building commissioner of the City of Kirkwood, also wrote to Eubanks on June 30 that a building permit could not be issued for 301 North Kirkwood Road because the proposed use was under the "special use category" of the Zoning Code.

Eubanks filed an application to appeal to the Board of Adjustment on August 3, 1987. By letter dated September 9, 1987, acknowledging receipt of the application to appeal, the building commissioner determined that Eubanks' service station, located in a B–2 zoning district, was a legal nonconforming use. As such, any alteration, modification, or change to that business would constitute abandonment of that status and would require a special use permit to continue the service station operation. Moreover, although a food store was a permitted use in a B–2 zoning district, the building commissioner interpreted the zoning ordinance to exclude gasoline pumping facilities as an accessory use to a food store.

Following a hearing on September 17, 1987, the Board unanimously ruled that the building commissioner correctly determined that Eubanks was required "to obtain a special use permit for the purpose of operating a combination food mart and service station or other facility that sells gasoline and related accouterments."

Eubanks thereafter filed a petition for a writ of certiorari pursuant to Section 89.-110 RS Mo. (1986). The circuit court reversed the Board's decision that had sustained the decision of the building commissioner and ordered the building commissioner to issue a permit to Eubanks.

Shortly after the trial court issued its ruling, the Kirkwood City Council enacted Ordinance 7768 that prohibits gasoline/convenience stores in the B–2 zoning district. The Board thereafter filed a Motion for Relief from Judgment in the trial court asserting that Ordinance 7768 applied to Eubanks' property and nullified the judgment of the trial court. That motion remains pending before the trial court.

The Board asserts several grounds for this appeal: (1) Kirkwood Ordinance 7768 prohibiting gasoline/convenience stores in the B–2 (or general business) zoning dis-

---

**1.** The application for special use exception shows that John P. King was agent for Eubanks, the owner of the property. In his letter of June 11 withdrawing the application for a special use permit, King stated that he represented the 7–Eleven Southland Corporation. He made no representation with respect to his agency relationship with Eubanks. Thus, the City of Kirkwood had no notice at the time the application was withdrawn that King was not acting on behalf of Eubanks.

trict renders the decision of the trial court moot; (2) the trial court erred in making a *de novo* review of the record before the Board and in failing to defer to the Board's interpretation of the Kirkwood zoning ordinance; (3) the trial court erred in holding that the proposed convenience market with gasoline pumps is a "food store," not a "service station," under the Kirkwood zoning ordinance; (4) the trial court erred in holding that, as a matter of law, self-service gasoline pumps are an "accessory use" to a "food store"; (5) the trial court erred in holding Eubanks' service station is a conforming use, not a legal nonconforming use; and (6) the trial court erred in taxing costs against the Board.

 Initially, the Board contends that Ordinance 7768, enacted after the trial court issued its ruling, renders the decision of the trial court moot. We disagree. The scope of appellate review in this case is first, whether the decision of the Board of Adjustment was legal in the sense of being authorized by law, and second, whether the decision of the Board is supported by competent and substantial evidence upon the whole record. *Huff v. Board of Adjustment of City of Independence*, 695 S.W.2d 166, 167 (Mo.App.1985). Where, as here, no additional evidence was heard in the circuit court and its decision was based solely upon the transcript of the proceedings before the Board, our jurisdiction is limited to review of the record of those proceedings. *See Mullen v. City of Kansas City*, 557 S.W.2d 652, 654 (Mo.App. 1977). Neither the Board nor the trial court had jurisdiction to consider an ordinance not yet enacted by the City Council. Because the jurisdiction of this court to entertain an appeal is derived from that of the trial court, and because the trial court lacked jurisdiction, this court therefore acquires no jurisdiction over this issue on appeal. *Wandfluh v. Wandfluh*, 716 S.W. 2d 420, 422 (Mo.App.1986). Similarly, the Board's Motion for Relief from Judgment, having never been ruled upon by the trial court, is not properly before this court. *See National Cypress Pole & Piling Co. v. Hemphill Lumber Co.*, 325 Mo. 807, 31 S.W.2d 1059, 1065 (1930).

The Board next asserts the trial court failed to apply the appropriate standard of review and, consequently, it erred with respect to each provision of the Kirkwood zoning ordinance at issue as it applied to Eubanks' proposed use of his property.

The purpose of a writ of certiorari pursuant to Section 89.110 RS Mo.1986 is to test the legality of the Board's order. *State ex rel. Weinhardt v. Ladue Professional Bldg., Inc.*, 395 S.W.2d 316, 320 (Mo.App.1965). Neither this court nor the circuit court can try this case *de novo* or substitute its judgment for that of the Board. *State ex rel. Ellis v. Liddle*, 520 S.W.2d 644, 646 (Mo. App.1965). Judicial review is limited to whether the decision of the Board was authorized by law and was supported by competent and substantial evidence upon the whole record. Article V, Section 18, Constitution of Missouri, RS Mo. (1986). To determine whether substantial evidence supports that decision, a court must view the evidence "in the light most favorable to the findings of the Board giving it the benefit of reasonable inferences that may be drawn from the record." *Volkman v. City of Kirkwood*, 624 S.W.2d 58, 59–60 (Mo.App.1981). If substantial credible evidence supports the Board's decision, and if the result reached is reasonable, the courts have no authority to disturb the decision unless it was clearly contrary to the overwhelming weight of the evidence. *Wolfner v. Board of Adjustment of City of Frontenanc*, 672 S.W.2d 147, 150 (Mo.App.1984), (*quoting Stockwell v. Board of Zoning Adjustment of Kansas City*, 434 S.W.2d 785, 789 (Mo.App.1968)).

 The Board contends the trial court, having failed to apply the proper standard of review, erred in holding Eubanks' proposed convenience market with gasoline pumps constituted a "food store," not a "service station," under the Kirkwood zoning ordinance. Article II, Section 1, paragraph 71 of that ordinance defines "service station" as:

[a] building, buildings, premises or portions thereof, which are used or arranged, designed or intended, to be used

for the retail sale of gasoline or other motor vehicle, motor boat or aircraft fuels and lubricants, and for the maintenance and minor repair of such vehicles.

In contrast, Article VI, Section 2, paragraph 50 defines food stores as:

[f]ood stores, including secondary use: Food stores including limited preparation and serving of food for consumption on the premises when conducted as part of the retail operations and secondary to the main use.

At the hearing before the Board, the building commissioner testified that, under the zoning ordinance, Eubanks' proposed 7–Eleven was more analogous to a service station than to a food store because it met both prongs of the definition of service station: first, a portion of the premises would be used for retail sale of gasoline; second, a portion of the premises would be used for maintenance and minor repair of vehicles since the business would provide customers air hoses and windshield wiper cleaning fluid and would sell motor oil. The commissioner's testimony further suggested that although the ordinance defining "service station" contained no definition of maintenance and minor repair, it did not exclude self-service maintenance and minor repair. Eubanks testified he would sell antifreeze and other such products commonly found in local food stores. Although stating the operation would have no service facilities, he was uncertain whether it would have an air hose.

The building commissioner and the Board of Adjustment found that the sale of gasoline and availability of an air hose and windshield wiper cleaning fluid coupled with the sale of motor oil, antifreeze, and other such products constituted substantial evidence from which to conclude Eubanks' proposal more closely resembled a service station than it resembled a food store under the Kirkwood ordinance. We hold this finding reasonable and based upon substantial, credible evidence.

Moreover, we find the cases upon which Respondent Eubanks relies unpersuasive. In *Southland Corp. v. City of Minneapolis*, 279 N.W.2d 822 (Minn.1979), the issue was whether a self-service gasoline dispensing system at a 7–Eleven store was an "automobile service station" within the context of an exception contained in a deed restriction. Because the language of the deed restriction virtually tracked the language of the local zoning ordinance, which permitted the operation of self-service pumps at the 7–Eleven store, the Minnesota Supreme Court held that the proposed self-service gasoline dispensing facility was an automobile service station within the language of the deed restriction and, therefore, denial of a pump permit by the City Council was improper. The language of the zoning ordinance and, therefore, of the deed restriction, differed completely from the language of the Kirkwood ordinance. Moreover, in the Minnesota case, Southland Corporation, owner of the 7–Eleven, had been denied a permit for the gasoline dispensing facility. Eubanks, in contrast, never completed an application for a permit for his proposed operation.

*In re Atlantic Richfield Co.*, 77 Pa. Cmwlth. 310, 465 A.2d 1077 (1983), is similarly distinguishable from the case at bar because the language of the zoning ordinances differ and because Eubanks failed to complete an application for a special use exception. Atlantic Richfield (ARCO) sought to convert its service station, a nonconforming use, to a gasoline/convenience store, also a nonconforming use, and to remove existing repair facilities. The relevant zoning ordinance provided, *inter alia*, that a nonconforming use could be changed to a conforming use of the same or a more restricted classification. The Commonwealth Court of Pennsylvania interpreted the ordinance to authorize the change of one nonconforming use to another of the same or a more restrictive classification by the discontinuance of the first use and the substitution of the second. It determined that ARCO's proposed change would retain a part of the existing nonconforming use— the sale of gasoline—and, at the same time, establish an entirely new nonconforming use—a convenience market. Because this proposal ran counter to the terms of the zoning ordinance, the court affirmed denial

of ARCO's request for a special use exception.

■ The Board next asserts, contrary to the holding of the trial court, substantial evidence supported its finding that self-service gasoline pumps fail to qualify as an "accessory use" to a "food store" under the Kirkwood zoning ordinance. Thus, even if Eubanks' proposed business operations were characterized as a "food store," which the Board disputes, the zoning ordinance would not authorize gasoline pumps as an accessory use. According to the ordinance, an "accessory use" is

[a] use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or business.

Following this definition, the ordinance lists examples of accessory uses, none of which include gasoline pumps.

At the hearing, the building commissioner testified that gas pumping facilities incidental to a food store were not customary in the City of Kirkwood. Moreover, he knew of no food store in the City of Kirkwood in the B–2 zoning district that had a gas pumping facility. Eubanks adduced no contrary evidence, but submitted as exhibits a Pennsylvania case and an Ohio case.

In *Food Bag, Inc. v. Mahoning Township Zoning Bd. of Adjustment,* 51 Pa. Cmwlth. 304, 414 A.2d 421 (1980), the Board of Adjustment denied the property owner a permit to install three self-service gasoline pumps in front of his existing food market. Grocery stores were a permitted use within the zone; gasoline service stations were not. The property owner contended gasoline pumps were an "accessory use" to his food market. Because it found the Board of Adjustment had failed to apply the correct legal interpretation of accessory use, the appellate court remanded the case to the Board of Adjustment with instructions to make further essential findings using the correct legal interpretation of accessory use. Contrary to Eubanks' contention in the case at bar, *Food Bag, supra,* fails to support the proposition that gasoline sales are accessory to food stores.

In *Brown v. City of Cleveland,* 66 Ohio St.2d 93, 420 N.E.2d 103 (1981), the city denied the property owner a variance after he converted the automobile repair bays of his gasoline service station, a valid, pre-existing non-conforming use, into a grocery store, a permitted use, and began operating this structure in the dual capacity of a gasoline service station and a grocery store. The Board of Zoning Appeals found that appellant's dual use of the property violated the accessory off-street parking requirements of the zoning code. The two dissenting opinions, upon which Eubanks relies, took issue with the majority opinion by alluding to the adverse economic consequences facing gasoline service stations that are prohibited from diversifying their business operations. The dissent viewed conversion of repair bays to a grocery store not as an abandonment of a valid non-conforming use, but as a shift in emphasis in a retail business without making structural alterations. Therefore, the dissent concluded the owner was entitled to a variance. The *Brown* case offers no support to Eubanks insofar as the majority in *Brown* found the dissenters' position unpersuasive.

Based upon the evidence presented to the Board on this issue, we hold the Board's interpretation of the Kirkwood ordinance that gasoline service pumps are not an accessory use to a food store is reasonable and supported by substantial credible evidence. The trial court's contrary finding is reversed.

■ In its next point on appeal, the Board contends the trial court erred in holding Eubanks' service station constitutes a conforming use rather than a legal nonconforming use in the B–2 zoning district. Section 1, Article IX of the Kirkwood zoning ordinance, relating to the requirements and procedures for special use exceptions, provides that

[a]t the effective date of this ordinance, an existing lawful use which is set forth as a special use exception in paragraph (a) of this section and which is located in a district in which such special use exception may be permitted shall be deemed a

conforming use hereunder and not a nonconforming use.

Because Eubanks' service station predated enactment of the Kirkwood zoning ordinance, it constituted a legal nonconforming use in the B–2 zoning district when the ordinance was adopted. Pursuant to the above-quoted section, a pre-existing nonconforming use will be deemed a conforming use for the sole purpose of the special use procedures, that is, it "shall be *deemed* a conforming use *hereunder....*" (Emphasis added). Thus, when the zoning ordinance was enacted, Eubanks, as the owner of a pre-existing nonconforming use, was not required to apply to the Planning and Zoning Commission for a special use permit.

■ Pre-existing nonconforming uses remained legal nonconforming uses for all other purposes, however, as evidenced in other sections of the Kirkwood zoning ordinance. Article XII, Section 1(b) relating to nonconforming uses and buildings, provides that

> [t]he lawful use of a building existing at the time of the effective date of this ordinance may be continued, although such use does not conform to the provision hereof. If no structural alterations are made, a nonconforming use of the building may be changed to another nonconforming use of the same or of a more restricted classification. Whenever a nonconforming use has been changed to a more restrictive use or to a conforming use, such use shall not thereafter be changed to a less restricted use.

Section 1(f) provides that

> [n]o existing building or premises devoted to a use not permitted by this ordinance in the district in which such building or premises is located, except when required to do so by law or order, shall be enlarged, extended, reconstructed, or structurally altered, unless such use is changed to a use permitted in the district in which such building or premises is located.

Thus, structural alteration made to a legal nonconforming use will extinguish its nonconforming status. *See, Boyce Industries*

*v. Missouri Highway and Transp. Comm'n,* 670 S.W.2d 147, 150 (Mo.App. 1984). This comports with the goal of zoning ordinances to diminish and decrease nonconforming uses. *Hoffman v. Kinealy,* 389 S.W.2d 745, 750 (Mo. banc 1965).

At the hearing before the Board, the building commissioner testified to the foregoing provisions of the zoning ordinance. Asserting that Eubanks' service station constituted a legal nonconforming use, he stated that a legal nonconforming use could be changed to a more restrictive use, but that no structural alterations could be made to a legal nonconforming use. Moreover, the building commissioner thought the City of Kirkwood contained no service stations that were conforming uses. In his testimony, Mr. Eubanks conceded that his proposed 7–Eleven constituted a structural alteration. The record before the Board, therefore, contained substantial, competent evidence from which the Board could properly conclude that Eubanks' service station constituted a legal nonconforming use. The trial court's finding is reversed.

With respect to the final point on appeal, the record contains no evidence that the Board acted with gross negligence, or in bad faith, or with malice in making its decision. The award of costs against the Board, therefore, is improper and must be reversed. § 89.110 RS Mo. (1986).

We hold that the trial court and, therefore, this court, lack jurisdiction to consider newly-enacted Kirkwood Ordinance 7748. As to the remaining points on appeal, we reverse the decision of the trial court.

Judgment Reversed.

DOWD, P.J., and SIMON, J., concur.