VILLAGE OF WESTWOOD, R. Mitchell and L. Berger, Plaintiffs/Appellants,

v.

BOARD OF ADJUSTMENT OF the MUNICIPALITY OF CREVE COEUR, et al., Defendants/Respondents,

and

St. John's Mercy Medical Center, Defendant–Intervenor/Respondent.

No. 59246.

Missouri Court of Appeals, Eastern District, Division Three.

June 11, 1991.

John E. Bardgett, Mark H. Levison and Denise L. Thomas, St. Louis, for plaintiffs/appellants.

Albert A. Michenfelder, Jr., Clayton, for defendants/respondents.

PER CURIAM.

This is an appeal from a judgment of the Circuit Court of the County of St. Louis affirming a decision of the Board of Adjustment of Creve Coeur (Board) approving a preliminary site development plan submitted by St. John's Mercy Medical Center (SJMMC). The decision of the Circuit Court and the Board constituted an affirmance of the decision of the Creve Coeur Planning and Zoning Commission (Commission). Plaintiff, Village of Westwood, is a small municipality whose boundary line is directly across the street from the Medical Center. Plaintiff Berger owns property in the Village. Plaintiff Mitchell owns property in Creve Coeur near the hospital.

In July of 1989, SJMMC submitted a proposal to the Planning and Zoning Commission requesting approval to modify its site plan in order to construct a power plant addition. This two story addition would include an incinerator, maintenance shop space and additional maintenance office space. The incinerator would burn solid and infectious waste generated by SJMMC. The original proposal estimated that approximately 10% of the waste burned would be defined as "infectious" waste that contains a pathogen which could spread an infectious disease. SJMMC claimed that the incinerator would reduce the amount of waste haulage from 25 trucks per week down to five. In addition, the Medical Center's proposal stated that the incinerator "will comply with all county, state and federal environmental regulations as well as all building and safety codes."

The proposal was placed on the agenda for the Commission's August meeting. Prior to this first hearing, the Zoning Administrator and representatives of HBM, the City's advisor on engineering issues, both submitted reports reviewing the proposal. Both reports discussed the possible

pollution from the incinerator. The Zoning Administrator included a list of ten questions that he recommended be asked of SJMMC. All ten were concerned with various aspects of incinerator operation and its regulation by government. In addition, both reports discussed whether the addition, including the incinerator, could be classified as an accessory use under the zoning code. Specifically HBA's report concluded:

The "PH" Planned Hospital District permits hospital, medical offices, extended care facilities and accessory facilities. The incinerator should be considered an accessory use since it is mechanical equipment or utility facilities related to or required by the permitted hospital use.

The Zoning Administrator agreed:

Section 26–51.3 [of the zoning code] lists examples of permitted accessory uses. Subparagraph (n) of the noted sections lists "mechanical equipment or utility facilities which are specifically related to and required by a permitted use." An incinerator would appear to fall within this category.

The basic site development plan requirements have been met regarding building location, site coverage, and parking.

At their August meeting the Commission received answers to the questions that had been posed by the Zoning Administrator. The Commission was informed by representatives of the Medical Center that permit applications to build and operate the incinerator were being submitted to the St. Louis County Division of Air Pollution Control. The Medical Center reiterated their intention to follow all local, state and federal regulations and expressed their intent to process waste only from their own facility, unlike Christian Northeast Medical Center which accepted waste from outside sources. In addition, the Medical Center listed major hospitals that either already have or were building the same type of facility: Christian Northeast, Deaconess, DePaul, Incarnate Word, St. Anthony's, St. Luke's, Bethesda, Cardinal Glennon, St. Louis University Hospital, and Washington University Hospital. The Commission asked additional questions pertaining to the type of incinerator, the handling of the ash that would be created, and the various governmental agencies which would be involved in monitoring the incinerator. The Commission then decided to defer its decision to allow the city staff to make further inquiries.

Prior to the Commission's September meeting additional information was provided by SJMMC and by the City Attorney. At the September meeting it was agreed that SJMMC would arrange for a tour of another area incinerator and that action would be deferred to allow the collection of additional information from St. Louis County and the EPA. The Commission also agreed to solicit proposals from consultants to review the project and discussed having a public meeting.

The project was approved at the October 1989 meeting of the Commission. Prior to approval, the members of the Commission had received an additional report from the Zoning Administrator who gave details of his contacts with various state and county agencies and discussed the case file of the incinerator at Christian Northeast. The proposal was placed on the November 1989 agenda at which two conditions were added to the Commission's approval of the project:

1. This preliminary approval is subject to receiving all approvals and permits required from any federal, state or county agencies. These approvals or permits must be obtained prior to the approval of a final site development plan or issuance of any construction permits for this project. Additionally, prior to the issuance of a permanent occupancy permit by the City of Creve Coeur, all final approvals or operating permits must be obtained from the appropriate agency or agencies listed above.

2. This approval is conditional on St. John's commitment that only on-site waste, as defined by Missouri Department of Health regulations, will be processed at this incinerator facility.

The Chairman of the Commission also announced that the city would hold a public information meeting the following evening, November 21, 1989, to answer any questions raised about the project.

Shortly before or after the November Commission meeting plaintiffs became aware of SJMMC's proposal. In December 1989, plaintiffs filed their appeal with the Board of Adjustment. The basis of plaintiffs' appeal was that the Commission had inadequately researched the relevant ordinances of Creve Coeur, specifically those concerned with refuse management and air pollution, and had inadequately investigated the possible dangers of the pollution from waste incinerators. To support these allegations, plaintiffs attempted to introduce various documents describing the pollution hazards from incinerators. Included in their submission were articles from various sources about infectious waste incinerators, excerpts of testimony taken before Congress, and excerpts of testimony in an unrelated suit that sought to close an incinerator. SJMMC objected to these documents contending that they were all hearsay. The Board agreed and refused to admit them. The Board issued findings of fact and conclusions of law denying plaintiffs' appeal. The Board stated three conclusions: 1) the incinerator was properly classified as an accessory use; 2) the incinerator did not violate Ordinance § 13–2 which required that incinerators be equipped to eliminate "smoke producing gasses [sic] and solids"; 3) that concerns about pollution were beyond the jurisdiction of the Commission. As these three findings form the basis of the appeal to us we will discuss them in further detail as needed to explain our decision.

■ Plaintiffs then appealed, through a Petition for a Writ of Certiorari, to the Circuit Court which affirmed the decision of the Board. This appeal followed. As is usual in a contested administrative case, we review the findings and decisions of the Board of Adjustment and not that of the Circuit Court. *City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51 (Mo. banc 1985), and we will affirm if it is supported by substantial evidence. *See Eubanks v. Board of Adjustment,* 768 S.W.2d 624 (Mo.App.1989).

Plaintiffs have briefed eight instances of alleged error to us. Our review has led to the conclusion that, in fact, plaintiffs have four major complaints.

■ First, plaintiffs complain that the incinerator was improperly classified as an accessory use. The relevant ordinance § 26–51.2 provides:

An accessory use is a structure or use which meets all of the following criteria.

(a) It is subordinate to and serves a principal building or a principal use.

(b) It is subordinate in area, extent or purpose to the principal use served.

(c) It contributes to the comfort, convenience or necessity of occupants, business or industry in the principal building or principal use served.

(d) It is located on the same lot as the principal building or principal use served.

Section 26–51.3 contains a list of "permitted accessory uses" including: "(n) mechanical equipment or utility facilities which are specifically related to and required by a permitted use."

Plaintiffs contend that the incinerator is not subordinate to the Medical Center but is, instead, "a separate, independently functioning facility." We disagree. The incinerator's purpose is to dispose of wastes created by the Medical Center. It will be housed in a building on-site. In a case with an ordinance almost identical to this one, our supreme court allowed a church to operate a day care center. *See City of Richmond Heights v. Richmond Heights Presbyterian Church,* 764 S.W.2d 647 (Mo. banc 1989). The court noted that:

The day care program is subordinate to the principal use of the church ... The record shows that the church operates the day care to attract new members to the church and accomplish its mission of preaching the gospel and serving the community. Similarly, the day care is subordinate in area to the principal building and use of the church ... The day care proper is located on the same lot as

the church and it is located in the same zoning district. *Id.* at 648.

Similarly, the incinerator will be operated for the benefit of the Medical Center. It will reduce the cost of transporting wastes off-site and will provide some heat for the entire facility. We see no evidence that this facility will be anything other than a subordinate use. Thus, the Board's decision "is authorized by law and is supported by competent and substantial evidence upon the whole record." *Hamrick v. Board of Zoning Adjustment*, 739 S.W.2d 735, 737 (Mo.App.1987).

■ Plaintiffs next contend that the Board erred in concluding that § 26–80.4 "Environmental Performance Standard—Toxic Matter" was preempted by county ordinances. Our review of Ordinance § 26–110, which created the Commission, convinces us that a detailed examination of SJMMC's project with respect to pollution control was not within the purview of the Commission. For example, § 26–110.1 states:

> The Creve Coeur Planning and Zoning Commission is hereby established to advise the Board of Aldermen on how best to preserve and protect the existing residential and business community, to provide for, plan, guide and direct the development, redevelopment and growth of the City and to encourage high standards of architectural, site and landscape design.

This does not suggest to us the type of highly technical, detailed review of projects that is urged upon us by plaintiffs. Rather, when read with the rest of the ordinances of the city, it is clear that the Planning and Zoning Commission is but the first step in the process of project approval. This interpretation of the Commission's function is supported by the numerous references throughout the city code to the enforcement powers of the Administrator who, for example, is responsible for enforcement of the Environmental Performance Standards:

> Whenever, *in the opinion of the Zoning Administrator*, there is a reasonable probability that any use or occupancy

violates these Environmental Performance Standards, he is hereby authorized to employ a qualified technician ... (Emphasis added). § 26–80.1(a).

In addition, it is the Zoning Administrator who actually issues the building permit, after reviewing detailed plans, and who inspects the work to ensure compliance with relevant building codes. Similarly, Chapter 612 of the County Code, entitled "The St. Louis County Air Pollution Control Code", mandates that the incinerator in question conforms to technical specifications and SJMMC will be required to obtain both a permit to build the incinerator and a permit to operate it once it has been determined that the incinerator complies with County requirements for pollution control. *See* §§ 612.110, 612.150, St. Louis County Revised Ordinances. The scheme of regulation described above is completely consistent with the State Air Conservation Statutes, specifically § 643.140 RSMo 1986, which states:

> Any constitutional or special charter county or city and any first or second class county may apply to the commission for a certificate of authority to operate its own permit and variance procedure within the boundaries of such county or city.... Any county which has such a certificate of authority may enforce its air pollution control regulations, and permit and variance procedures, in cities within such county and *such cities will not be entitled to such a certificate of authority.* (Emphasis added.)

Therefore, the Board of Adjustment's opinion that the Commission's powers did not extend to pollution control is a reasonable interpretation of the ordinances in question, and indeed, satisfies a rational allocation of administrative responsibility that assigns evaluation of technical issues to agencies that are already well equipped for the task. We thus conclude that the Board's findings on this issue were "authorized by law and supported by competent and substantial evidence." *Eubanks v. Board of Adjustment*, 768 S.W.2d 624, 627 (Mo.App.1989).

Contrary to plaintiffs' assertions, this conclusion does not mean that the City's Ordinance is a "meaningless effort", because the Zoning Administrator clearly retains the power to regulate existing uses and to guarantee that such existing uses are in compliance with § 26–80.4.

▪ Similarly, the Zoning Administrator is charged with enforcement of Creve Coeur Ordinance § 13–2 regulating incinerator use:

a) Lawful Operations: The disposal of refuse shall be considered lawful if it is performed by:

3) any other person, provided he effects the disposal of garbage on his own premises by means of a garbage grinding and disposal unit and the disposal of rubbish by means of any incinerator located within or outside of a building on his premises and such incinerator is equipped with an electrical or mechanical device to eliminate smoke producing gases and solids and provided further that these disposal facilities and their operation conform with the provisions of this Chapter and have been approved by the health inspector.

At this early stage of the process there is no evidence that the proposed incinerator will violate this ordinance. Indeed, at first glance, the proposed incinerator complies with the ordinance because it inarguably is equipped with mechanical devices to eliminate "smoke producing gases and solids...." In the absence of solid information regarding the specifications of the incinerator, we do not believe that the Commission or the Zoning Administrator would be justified in assuming the incinerator will, at some future time, violate the ordinance and vetoing its construction based upon this assumption. Thus, the Board's decision that the proposed incinerator did not violate § 13–21 is a reasonable one.

Plaintiffs also allege that the Commission violated due process and its own procedural requirements by: a) failing to "consider the Required Report"; b) failing to "Coordinate a Review With Other Departments"; c) failing to "Complete a Review Within Sixty Days"; d) Failing to "Hold a Public Hearing"; and e) failing to "Retain an Expert". Our review of the record indicates that these allegations are without merit as they are either factually refuted by the record or not legally required by the ordinances of the City.

▪ While § 26–115.3 does place a time limit on review of 60 days, the review mentioned is the review by the Zoning Administrator not the Commission. Section 26–115.3(d) allows additional time (45 days) if the applicant (SJMMC) chooses to respond to the review of the Zoning Administrator. Clearly, in the present case the colloquy between the Commission, the Zoning Administrator and SJMMC justified the additional time that was added to the Site Review Schedule. We see no violation of city ordinance.

▪ Plaintiffs contend that the trial court should have admitted a copy of Ordinance § 13–2 into evidence, because the ordinance was considered by the Board. We agree with plaintiffs that since § 13–2 had been considered by the board it was appropriate evidence in the review by the Circuit Court. Section 89.110, RSMo 1986, states: "If, upon the hearing, it shall appear to the Court that testimony is necessary for the proper disposition of the matter, it may take additional evidence ...." *See State ex rel. Rhodes v. City of Springfield,* 672 S.W.2d 349, 355 (Mo.App.1984). Clearly, if the Board considered the ordinance in its deliberations then a meaningful review by the circuit court requires that the trial court accept it into evidence. However, in the present case the importance of the evidence is minimal and does not affect our decision. In all respects we find that the actions of the Board of Adjustment were supported by the evidence and we therefore affirm its judgment.