STATE of Missouri ex rel. William C. DIERBERG and Mary H. Dierberg, Relators/Appellants,

v.

The BOARD OF ZONING ADJUSTMENT OF ST. CHARLES COUNTY, Respondent,

and

Edward L. Connor, Intervenor.

STATE of Missouri, ex rel., Edward L. CONNOR, Relator/Respondent,

v.

Mary L. KALETTA, et al., Respondents,

and

William C. Dierberg and Mary H. Dierberg, Intervenors.

No. 64631.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 1, 1994.

Albert A. Michenfelder, Jr., Ziercher & Hocker, Clayton, for relators-appellants.

Stephen A. Martin, Stephanie K. Gastman, and Beck, Tiemeyer & Zerr, Ronald R. Fralicx, St. Charles, for respondent.

AHRENS, Judge.

William and Mary Dierberg appeal the judgment of the circuit court which reversed the St. Charles County Board of Zoning and Adjustment's (BZA) decision that a nonconforming use had been established and affirmed the BZA's decision that the nonconforming use had been unlawfully extended. We affirm in part and reverse in part.

Appellants own a 400 acre tract of land in western St. Charles County. In 1971, they opened a private hunting club, Pond Fort Estate Hunt Club, and sold six memberships. Prior to the opening of the club, appellants constructed a lake, a duck blind, deer stands, and a call-back box. They also planted wild plants and flowers on the property. The club was initially open only to members and their guests. There was no limit on the number of guests a member could bring to the club. Activities at Pond Fort included hunting, fishing, camping, claybird shooting, and dog training. Claybird shooting took

place anywhere on the property. Pond Fort has operated continuously up to the present.

In 1974, Pond Fort obtained a permit and built a dog kennel. A permit was also secured for the mobile home which was placed on the property in 1974. In 1991, a pavilion with restrooms was constructed on the property without a permit and the Zoning Commissioner instructed appellants to keep it locked. Since then, the pavilion has not been used.

Beginning in 1976, Pond Fort has allowed members of the public to enter the property and shoot claybirds for a fee. The club premises have also been used for claybird shooting leagues. In addition, Pond Fort has hosted a number of tournaments which were open to nonmembers. These activities, in addition to the increase in membership to 145 members, have resulted in an increase in the intensity of claybird shooting.

Falling Leaf Subdivision was developed on a tract of land adjacent to the western boundary of Pond Fort. The development of the subdivision began after the creation of Pond Fort. In response to the development, Pond Fort established a 150 yard buffer zone along the boundary, in which no fire arm hunting is permitted.

On May 22, 1992, the Zoning Commissioner and Planning Director of St. Charles County sent a letter to appellants alleging that appellants' operation of Pond Fort was in violation of the 1973 St. Charles Zoning Order, because a private club could only be operated in the A-2 Agricultural District if a conditional use permit was issued. Pond Fort is in the A-2 Agricultural District and did not obtain a conditional use permit. The letter therefore instructed appellants to cease any claybird shooting on or before June 2, 1992, and to restrict all hunting activity to the owners, caretakers, and their private guests. Appellants filed their appeal to the BZA and requested a determination that the operation of Pond Fort was a legal nonconforming use. The BZA, after a public hearing, reversed the decision of the Zoning Commissioner that appellants had not established a legal nonconforming use, but affirmed the Zoning Commissioner's decision that the nonconforming use had been unlawfully extended.

Appellants filed a petition for a writ of certiorari from the decision of the BZA that the nonconforming use had been unlawfully extended, in which respondent Edward L. Conner intervened. Respondent Conner then filed a petition for a writ of certiorari from the decision of the BZA that appellants had established a nonconforming use, and appellants intervened. After hearing the consolidated case, the trial court entered Findings of Fact and Judgment reversing the decision of the BZA that a nonconforming use had been established and affirming the decision of the BZA that the nonconforming use had been unlawfully extended.

■ Appellants assert the trial court erred in receiving evidence, over their objection, of the zoning ordinance which was in effect in St. Charles County prior to January 4, 1973. We agree.

At the certiorari hearing, the circuit court considered additional evidence, over appellants' objection, offered for the first time by Respondent Conner. This evidence was the Zoning Ordinance in effect for St. Charles County prior to 1973. This ordinance was identified by Steve Lauer, Director of Planning for St. Charles County. Section 23 of the Zoning Ordinance required a land use permit for the purposes of operating skeet shoots, target ranges, fishing lakes, and other privately owned recreational areas. Lauer also testified, however, that these land use permits were never required or enforced unless the building of a structure was involved.[1]

The statutory provision for review of county zoning orders by certiorari in first-class counties is § 64.120 RSMo 1986. This provision has been interpreted to allow the circuit court to hear and consider additional evidence only when there is an allegation of procedural irregularities or unfairness by the zoning board. *State v. Randall,* 275 S.W.2d

---

1. Respondent BZA does not challenge the lawfulness of appellants' nonconforming use based on the failure to obtain a land use permit, but rather challenges it only on the basis of an extinguishment theory.

758, 761 (Mo.App.1955). The provision, like the similar provision for review of city zoning orders by certiorari, was not meant to change the nature of the hearing from one of review to one de novo on the merits, but was intended only to allow further evidence which touches upon the procedural legality of the hearings before the BZA. *State v. Ladue Professional Building, Inc.,* 395 S.W.2d 316, 321 (Mo.App.1965). Respondent Conner's petition for Writ of Certiorari did not plead either procedural irregularity or unfairness on the part of the BZA. In addition, the evidence offered by Respondent Conner in the circuit court dealt with the merits of the case and not with the procedural legality of the BZA hearing. Therefore, appellants' objection to the evidence should have been sustained and the evidence will be disregarded.

Appellants next point on appeal is that the trial court erred in reversing the decision of the BZA that appellants had established a lawful nonconforming use of a private club prior to the effective date of the January 4, 1973 St. Charles County Zoning Order.

Appellants, in accordance with the 1973 Zoning Order of St. Charles County, petitioned the BZA to determine whether a nonconforming use exists on the Pond Fort property. At the BZA hearing, the Zoning Commissioner and appellants offered a written stipulation that appellants' property was zoned in the A–Agricultural District in 1971; a private club was a permitted use on properties located in the A–Agricultural District in 1971; that appellants' property was zoned A–2 Agricultural District since January 4, 1973; and, a private club has been a conditional use in that district since that date. In addition to these stipulations, Mr. Dierberg and several early members of Pond Fort testified as to the activities which took place at the private club prior to January 4, 1973. Mr. Dierberg also testified that those activities have been conducted consistently and continuously since the opening of the club.

The term 'nonconforming use' has been defined as "a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions." *Ogawa v. City of Des Peres,* 745 S.W.2d 238, 243 (Mo.App.1987). After the hearing, the BZA found that appellants had established a lawful nonconforming use prior to 1973. The circuit court, however, after hearing additional evidence, reversed this decision.

■ Our review is of the BZA's action and not the judgment of the circuit court. *Rice v. Bd. of Adjustment of Bel–Ridge,* 804 S.W.2d 821, 822 (Mo.App.1991). It is limited to a determination of whether the BZA's action is authorized by law and supported by competent and substantial evidence on the whole record. *Ogawa,* 745 S.W.2d at 242.

■ Section 9 of the Zoning Order of St. Charles County authorizes the BZA to make a determination of the existence of a nonconforming use:

*Existence of a nonconforming use.* Whether a nonconforming use exists shall be a question of fact and shall be decided by the Board of Adjustment after public notice and hearing and in accordance with the rules of the Board.

At the hearing, the BZA had before it the stipulations of the parties that a private club was a permitted use in Pond Fort's district prior to 1973 and a conditional use in that district since January 4, 1973. In addition, there was uncontradicted evidence that Pond Fort opened as a private club in 1971. Given this evidence, we find the BZA's determination that appellants had established a lawful nonconforming use prior to the enactment of the 1973 Zoning Ordinance of St. Charles County to be supported by competent and substantial evidence. We therefore affirm the BZA's determination and reverse the circuit court's judgment on this point.

■ Appellants' next point on appeal is that the trial court erred in affirming the BZA's decision that appellants unlawfully enlarged, extended and altered the nonconforming use. Appellants argue this decision was not supported by substantial and competent evidence. We disagree.

Prior to January 4, 1973, Pond Fort was a private club at which members and their guests could hunt, fish, camp or shoot clay-

birds. Since that time, the activities at Pond Fort have increased in intensity. Appellants argue this increased activity is the result of an increase in membership. Although this can explain a portion of the increase, much of it is attributable to the fact that Pond Fort was opened up to the public. Nonmembers were allowed to come onto the property for a fee and shoot claybirds. Leagues and tournaments were held on the property. In addition, a pavilion was constructed on the property. We find there is substantial and competent evidence to support the BZA's determination that appellants unlawfully enlarged, extended and altered the nonconforming use.

After finding that the nonconforming use had been unlawfully extended, the BZA concluded: "... as to the extension of the nonconforming use or *any use beyond the lawful nonconforming use,* the decision of the Zoning Commissioner is affirmed." (emphasis added). The decision referred to was contained in a letter from the Zoning Commissioner to the appellants which read:

> The effective date of this Cease and Desist Notice/Order will be June 2, 1992. Inspections of the property will be conducted beginning June 3, 1992. To meet compliance, the following conditions are hereby established:
>
> 1. Cease any claybird/skeet/trap shooting on or before June 2, 1992.
> 2. Restrict all hunting activity to the owners, caretakers, and private guests of the property owners and caretakers.

The BZA's conclusion, in short, is that appellants had established a legal nonconforming use which was later unlawfully enlarged and that the established nonconforming use may continue but those activities which exceed the established nonconforming use must stop.

Respondents argue, contrary to the conclusion of the BZA, since appellants unlawfully enlarged their nonconforming use of the property, they forfeit the nonconforming use. Respondent BZA cites *Eubanks v. Board of Adjustment,* 768 S.W.2d 624 (Mo.App.1989) as authority. In that case, a service station owner challenged the Board of Adjustment of Kirkwood's decision requiring him to obtain a special use permit to operate his proposed food market and service station. This court found that the service station predated the enactment of Kirkwood's zoning ordinance and therefore constituted a legal nonconforming use. In dicta,[2] this court cited *Boyce Industries v. Missouri Highway and Transp. Comm'n,* 670 S.W.2d 147 (Mo.App. 1984), for the proposition that "structural alteration made to a legal nonconforming use will extinguish its nonconforming status." *Eubanks,* 768 S.W.2d at 630. *Boyce,* however, is distinguishable on its facts. While a nonconforming use was extinguished in *Boyce,* the authority to terminate the nonconforming status of highway signs in violation of the statute was granted to the Highway and Transportation Commission by the specific language of the Billboard Act. We find that neither *Boyce* nor *Eubanks* apply to the facts of the case before us.

Respondent BZA also argues that the conversion from a private use to a commercial business discontinues the preexisting nonconforming use. In *Mullen v. City of Kansas City,* 557 S.W.2d 652 (Mo.App.1977), a property owner applied for a special permit to establish a legal nonconforming use for his horse breeding farm. The Board of Zoning Adjustment denied his application and the Circuit Court affirmed, finding that there was competent and substantial evidence to support the decision. The appellate court held that the evidence warranted the Board's finding that the property was not used as a horse breeding farm when the property was annexed by Kansas City but rather the horses were kept on the property for the resident family's enjoyment. When the owner began breeding horses on the property he changed the existing use of the property into a commercial venture and thereby discontinued that use. The property owner was therefore not entitled to a permit to continue use of the property as a horse breeding farm as a legal nonconforming use. *Mullen,* 557 S.W.2d at 655.

---

**2.** In *Eubanks,* the question surrounded a *proposed* addition to the existing nonconforming use, not a structural alteration which had already been made. Therefore, the quoted language concerned an issue not before the court.

Respondent BZA makes much of the fact that, in *Mullen*, the property was changed from a recreational to a commercial use. They argue that the property owner forfeited his legal nonconforming use as a result. First of all, there was no finding that the property owner forfeited his preexisting legal nonconforming use. Rather, the court merely upheld the Board of Zoning Adjustment's decision to deny the property owner's application for a permit to establish a legal nonconforming use for his horse breeding farm. No where did the court find that the property owner forfeited his nonconforming use of the property of maintaining horses for recreational use. Secondly, neither the Board of Zoning Adjustment nor the court indicated that the basis for the denial of the permit was the change from recreational to commercial use of the property. In its analysis, the court emphasized the fact that the horse breeding operation was not in existence at the time of the annexation of the property by Kansas City, and was therefore not a legal nonconforming use at the time of the hearing.

There being no Missouri cases directly on this point, we look to cases from other states for guidance. One New York case dealt with a facility which was both substantially enlarged and converted from seasonal to year round public use. The court refused to forfeit the nonconforming use in those circumstances but did enjoin the enlargement of the property's use beyond that which existed at the time of the adoption of the zoning ordinance. *Town of Oyster Bay v. Avalon Yacht and Cabana Club, Inc.*, 38 A.D.2d 604, 329 N.Y.S.2d 185 (N.Y.1971). Another New York case held "the fact that a valid nonconforming use had been expanded or enlarged does not work a forfeiture of the right to continue the original nonconforming use. If such use has been continued notwithstanding the extension, only the extended use may be prohibited." *Garcia v. Holze*, 94 A.D.2d 759, 462 N.Y.S.2d 700, 703 (2 Dept.1983).

■ We find no cases in which the nonconforming use of property is forfeited due to an enlargement or extension of that use, absent specific statutory authority. The 1973 St. Charles County Zoning Ordinance, while pro-hibiting an enlargement of a nonconforming use, does not provide for the forfeiture of that use in the event of an enlargement. "Zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority." *Rice*, 804 S.W.2d at 823. Since the 1973 St. Charles Zoning Ordinance does not specifically provide for forfeiture, given the reasoning of the above New York cases, the BZA was correct in determining that appellants' nonconforming use may continue.

■ It is important to keep in mind that the BZA did not find that appellants forfeited their nonconforming use of the Pond Fort property. Rather, the BZA's holding indicates that Pond Fort retained its nonconforming use status, but must discontinue those activities which exceed the property's use as of the passage of the 1973 ordinance. The Circuit Court disagreed and reached the conclusion that by opening the private club up to the public, appellants were deemed to have abandoned their prior legal nonconforming use. The Circuit Court cites no authority for this legal conclusion nor has our research revealed any. One commentator has stated, however:

> If there has been a "change of use", the general rule is that the previous use has been abandoned and cannot be resumed. If there has merely been an unauthorized extension or enlargement, the previous use cannot be said to have been abandoned because it still exists, and the fact of extension or enlargement in itself is evidence of the intent not to abandon it. In such cases the court usually compels the operator to diminish the size of his activity to that which previously existed.

Rathkopf, *The Law of Zoning and Planning*, Vol. 4, pg. 51A–47.

The BZA found appellants' current use of the Pond Fort property to be an unauthorized enlargement of the previous use, not a "change of use." The evidence shows that members of the club have continuously used the property in a manner consistent with the property's use prior to January 4, 1973, notwithstanding the unauthorized enlargement. Accordingly, the previous authorized use was

not abandoned. We therefore reverse the Circuit Court on this point.

■ We find the BZA was correct in determining that appellants must cease those activities which exceed appellants' lawful nonconforming use of the property. The activities which must cease include the use of the pavilion and restrooms; the sale of ammunition, claybirds and gamebirds; tournaments and leagues; and the admission of the public (persons who have not paid the full membership fee), excluding guests who are accompanied by a member and allowed to enter and shoot for free.

Pond Fort is to be returned to what it was prior to January 4, 1973—a private club. In accordance with the BZA's finding that a lawful nonconforming use exists, those activities which took place prior to 1973 or for which a subsequent permit was obtained will be allowed to continue. Permitted uses of the property include hunting; fishing; camping; dog training and kenneling; and claybird shooting by members and their guests. Since its beginning, there has not been a limit on the number of members at the club and the BZA's determination does not affect this policy.

With regard to claybird shooting, the evidence showed that prior to 1973, the entire 400 acres were used and shooting could be done at anytime. The claybirds were propelled by use of hand-held or movable spring-loaded machines. This form of claybird shooting will be permitted to continue. There was, however, no skeet or trap shooting done on the property. Crazy quail courses were not developed on the property until after 1973. Skeet and trap shooting and crazy quail courses exceed the authorized nonconforming use and must cease in accordance with the determination of the BZA.

The case is remanded to the BZA for entry of judgment in accordance with this opinion.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.