Kurby L. and Catherine LAW, Appellant,

v.

CITY OF MARYVILLE,
Mo., Respondent.

Kurby L. and Catherine
LAW, Respondent,

v.

CITY OF MARYVILLE, Mo., Appellant.

Nos. WD 51910, WD 51953.

Missouri Court of Appeals,
Western District.

Oct. 8, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

Larry Lee Zahnd, Maryville, for Laws.

David A. Baird, City Atty., Maryville, for City of Maryville.

Before ULRICH, C.J., P.J., SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal and cross-appeal of a declaratory judgment involving the allowable uses of two structures located on property zoned for residential use. The Honorable John C. Andrews, Circuit Judge, Nodaway County, ordered the southern structure, a house, to be used as a single family residence in conformity with the ordinance; the northern structure, a block building, to be given non-conforming use protection for use as a storage facility; and, the City of Maryville to pay $1,000 in attorney's fees. Kurby L. and Catherine Law, hereinafter "the Laws," appeal, claiming the trial court erred by declaring the southern structure was being used as a residence in conformity with the "R–2" zoning designation at the time of its adoption and was therefore not entitled to grandfathered non-conforming use protection; by not granting non-conforming use protection for any principal permitted commercial use of the northern structure; and for declaring two inconsistent uses for the two structures on the one plot of land. The City of Maryville, hereinafter "the City," cross-appeals, claiming the trial court erred by granting non-conforming use protection to the northern structure; and by ordering it to pay $1,000 of the Laws' attorney's fees. We affirm in part and reverse and remand in part.

### Facts

In 1991, the City passed a new zoning code that designated the property in question, 401 East 6th Street in Maryville, "R–2," for single family residence. At that time, the Laws' predecessors in title, Ronnie H. Newberry and Marsha K. Newberry, were using the southern structure on the property, the house, as their residence and, by some accounts, for some business-related activities. The Newberrys used the other relevant building, the block structure, as an auto repair shop; such use would be classified "C–3," for use as a commercial district, under the new zoning code. A section of the new zoning ordinance, § 405.3510 of the Municipal Code Book of the City of Maryville, pro-

vided that any existing non-conforming use would be allowed to continue.[1] It is undisputed that the Newberrys' non-conforming use of the block structure as an auto repair shop was protected, or "grandfathered," by this provision. The Newberrys continued using both structures consistent with their prior use until they sold the property to the Laws, June 1, 1993.

After purchasing the property, the Laws began using the block structure as a storage facility for Mr. Law's electrical business, ceasing any use of it as an auto repair shop. Concurrently, the Laws rented the house to several individuals. Thereafter, the Laws unsuccessfully attempted to sell the property several times. They blamed their failure to secure a purchaser on the City, which had informed potential buyers the block structure's only commercial use could be as an auto repair shop and the house could only be used as a single family residence.

The Laws filed this action seeking a declaratory judgment May 19, 1994, regarding the allowable uses of the property under the new zoning code. The trial court declared that at the time of the code's adoption, the house was being used as a residence consistent with the land's zoning designation; thus, the house was not eligible for any non-conforming use protection. However, the court did protect the non-conforming use of the block structure for commercial purposes as a storage building. Finally, the court ordered the City to pay $1,000 of the Laws' attorney's fees.

The Laws raise three points. First, they argue the trial court erred by declaring the house was being used as a residence in conformity with the zoning code at the time of the code's adoption, because they claim business was conducted there. Second, they argue the court erred by not granting full non-conforming commercial use protection for the block structure. Third, they claim the trial court erred by declaring the two structures may be used differently, one residentially and one commercially, as violative of the ordinance.

The City counters and raises two additional points. First, it argues the trial court erred by granting non-conforming use protection to the block structure at all, claiming non-conforming use protection was for use as an auto repair shop only and was waived 110 days after such use ceased. Second, the City argues the trial court erred by ordering it to pay the Laws' attorney's fees.

## Standard of Review

In an appeal of a court-tried civil case, the decree or judgment of the circuit court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. 1976); *Hankins v. Hankins,* 920 S.W.2d 182, 185–86 (Mo.App.1996).

## I.

In their first point, the Laws claim the trial court erred by declaring the southern structure, the house, was being used as a single family residence consistent with the zoning designation of R–2 at the time the new zoning code was passed, thereby providing no basis for "grandfathering" non-conforming use protection. We disagree.

Mr. Newberry testified that he had conducted some business in the house in that the business phone rang there; that some business records were stored there; and that the business's mail was sent there. However, the evidence was undisputed that the Newberrys also used the house as their residence. The trial court held, after hearing all the evidence, that at the time the zoning code was adopted on June 10, 1991, the house was being used as a single family residence in conformity with the new zoning designation of R–2.

The credibility of witnesses and the weight to be given testimony is a matter for the trial

---

1. "The lawful use of land, structures or buildings existing at the time of the adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued except as provided herein, but if continuous operation is suspended, ceased or discontinued for one hundred ten (110) calendar days, any further use of said premises shall be in conformity with the provisions of this ordinance." § 405.3510 Maryville Zoning Code.

court, which is free to believe none, part or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988); *Matthews v. Moore,* 911 S.W.2d 664, 668 (Mo.App.1995). On appeal of a court-tried case, an appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles that may not be completely revealed by the record. *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo. banc 1984); *Matthews,* 911 S.W.2d at 668.

In finding that at the time the zoning code was adopted the house was being used as a single family residence in conformity with the new zoning code designation of R–2, the trial court either did not believe the evidence regarding commercial use of the house or found the use to be de minimis in comparison to the residential use. Either way, we find no abuse of discretion or error in the trial court's finding that the use of the house at the time the ordinance was passed was as a single family residence in conformity with the new zoning code designation, thereby preventing non-conforming use protection as to this structure.

Point denied.

## II.

■ In their second point, the Laws claim the trial court erred by not declaring the northern, or block, structure protected for all principal permitted non-conforming C–3 uses. They claim the trial court's judgment on this issue is ambiguous as to whether it protects all non-conforming C–3 uses or limits the protection to the block structure's current use as a storage facility only. The City cross-appeals the trial court's order regarding the block structure, claiming it erred by declaring non-conforming use protection. The City argues that once the Laws suspended operation of the block structure as an auto repair shop for 110 days, any non-conforming

use of the structure was prohibited.[2] We first address the City's point, because if the block structure is not entitled to non-conforming use protection, the Laws' point regarding the ambiguity of the trial court's judgment would be moot.

The Maryville zoning code ranges from the most restrictive designation, R–1, through the least restrictive designation relevant here, C–3.[3] The code provides that principal permitted uses in a designated zone include any less non-conforming, i.e., more restrictive, use. Maryville Zoning Code § 405.2160, § 405.2440, § 405.2570. For example, any R–1 through R–4 and any C–0 through C–2 use would be a permissible non-conforming use within a C–3 designated zone. The City concedes in its brief that if the use of a building with non-conforming use protection changes to a more nearly conforming use, from an R–4 to an R–3 use when the land is designated R–2 for example, non-conforming use protection continues in the building. However, non-conforming use protection would not extend when a protected use is changed to a less restrictive or more non-conforming use, such as from R–4 to C–0 on R–2 designated land. However, the question we must answer is whether non-conforming use protection survives when a protected use is changed to an *equally* non-conforming use, such as here, where the change is from one C–3 use to another C–3. The zoning code does not speak to such changes.

■ "In interpreting ordinances, the appellate court gives words their plain and ordinary meaning, by considering the *entire* act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory, or oppressive results." *Firemen's Retirement Sys. v. City of St. Louis,* 911 S.W.2d 679, 680 (Mo.App.1995) (emphasis added). In *Huff v. Board of Adjustment of the City of Independence,* 695 S.W.2d 166 (Mo.App.1985), the landowner sought approval from the city to

---

2. Maryville Zoning Code § 405.3510 allows a property owner 110 days after continuous operation of a grandfathered non-conforming use ceases before such use is prohibited.

3. R–1 allows only single family residences for low density residential uses. The code provides for less restrictive residential uses, R–2 through R–4. The four commercial designations, C–0 through C–3, are less restrictive respectively than the four residential uses.

make a change from one non-conforming use to an equally non-conforming use. The court held that the landowner could not do so because the city's zoning code, "in clear, precise words of common usage, absolutely prohibit[ed]" such changes. *Id.* at 168–69.

Here, the City's zoning code is silent as to the effect of a change from one non-conforming use to an equally non-conforming use. However, changes in non-conforming use were clearly contemplated by the City; the express language of the code allows property owners to change to a more nearly conforming use. Yet, despite the existence of the *Huff* decision stating a municipality could do so, when the City drafted the zoning code it chose not to include language prohibiting what they now ask this Court to prohibit. This leads us to find that the purpose of the relevant portions of the zoning code is merely to restrict *expansion* of non-conforming uses, not just any change of such use. Obviously, *equal* changes in non-conforming use do not conflict with the purpose against expansion of non-conformity; it would be illogical and absurd to conclude otherwise.

■ " 'Zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the land owner against the zoning authority.' " *State ex rel. Dierberg v. The Board of Zoning Adjustment of St. Charles County,* 869 S.W.2d 865, 870 (Mo.App.1994); *Rice v. Bel–Ridge Board of Adjustment,* 804 S.W.2d 821, 823 (Mo.App. 1991). If the City wants to restrict property owners more than can presently be inferred from the language and purpose of the zoning code, the City must expressly state such a restriction within the language of the code. Because it had an opportunity to specifically state this alleged restriction, which is contrary to common law property rights, within the code, but did not, we construe the language of the code against the City and find that a change from one non-conforming use to an equally non-conforming use is protected.

We now proceed to the Laws' claim that the trial court erred by not declaring the

block structure protected for all principal permitted non-conforming C–3 uses. The Laws claim the trial court's judgment on this issue is ambiguous whether it protects all non-conforming C–3 uses or limits the protection to the block structure's current use as a storage facility.

■ "In a declaratory judgment the declaratory relief entered by the trial court in judgment should be complete." *City of Hamilton v. Public Water Supply Dist. # 2 of Caldwell County,* 849 S.W.2d 96, 101 (Mo. App.1993). "All the questions of right, status or other legal relations encountered in adjudicating the controversy should be settled by a declaration of rights so as to end the uncertainty that gave rise to the proceeding." *Id.* "When the trial court fails to make a declaration settling rights, ... a reviewing court may make the declaration." *Nicolai v. City of St. Louis,* 762 S.W.2d 423, 426 (Mo. banc 1988). When there are no disputed facts, and the issue is a purely legal one, the reviewing court will declare the rights and duties of the parties. *Id.*

The trial court, in its judgment, granted "non-conforming use protection for the block building as a commercial structure which serves as a storage building for a business whose public-contact facility is located elsewhere." (L.F. P. 15). We find this ambiguous. We are uncertain whether it restricts non-conforming use protection to storage use only or allows any principal permitted "C–3" use. Determination of this issue depends solely on interpreting the zoning code, § 405.3550;[4] therefore, it is purely a legal issue, and this court may make the declaration of rights. *Nicolai,* 762 S.W.2d at 426.

As we found, *supra,* the zoning code specifically allows non-conforming use protection to continue when the use changes to a more nearly conforming use. Further, we held, *supra,* that the zoning code would be interpreted to allow such protection to continue when the use is changed to an *equally* non-conforming use. Therefore, the trial court could not merely limit the non-conforming

4. "When the use of a building has been changed to a more nearly conforming use, such building shall not again be used for a less restrictive use or a use with a greater degree of non-conformity.

The principal permitted uses listed under a specific district shall be interpreted to have the same degree of non-conformity in applying this provision." § 405.3550 Maryville Zoning Code.

use protection for the block building to its use as a storage facility. The correct interpretation of the Maryville zoning code grants non-conforming use protection to the block building for any C–3 use.

We reverse and remand the trial court's judgment regarding the use of the block structure and order the trial court to grant the Laws declaratory relief, consistent with this opinion.

## III.

In their third point, the Laws claim the trial court erred by declaring non-conforming use protection for only one of the two structures, thus creating two zoning classifications on the same lot. The Laws claim this violates the ordinance. We disagree.

Zoning code § 405.3510 provides "[t]he lawful use of land, *structures or buildings* ..." may be grandfathered under the new zoning code. (*emphasis added*). Clearly, the ordinance allows non-conforming use protection to be extended to buildings and structures, in addition to land. Appellant cites no case law supporting its proposition that one lot may not contain two or more structures with inconsistent use protection. The lot remains *designated* an R–2 zone; the block structure, not the lot, is merely granted non-conforming use protection for C–3 use. Thus, there is no split designation of the lot as contended by the Laws. Point denied.

## IV.

Finally, the City claims the trial court erred by ordering it to pay a portion of the Laws' attorney's fees, because the Laws did not establish any unusual circumstances. The Laws presented evidence at trial that they had incurred $2,150 in attorney's fees. The trial court ordered the City to pay $1,000 of these. The City does not attack the reasonableness of the amount the court ordered it to pay.

"Missouri courts have historically adhered to the 'American rule' that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recov-

ery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits." *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo.App.1993). There is no provision for attorney's fees in the state statutes that authorize declaratory judgments. § 527.010–.290 RSMo 1986. However, courts have relied on § 527.100, which allows costs to be awarded as may seem equitable and just, when awarding attorney's fees in declaratory judgment actions where "very unusual circumstances" have been shown. *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991).

The trial court did not include in the judgment its reason for awarding attorney's fees. In a court-tried case, where there are no findings of fact or conclusions of law, all issues are to be deemed found in accordance with the result reached and the judgment affirmed if it could be rendered on any reasonable theory. *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 225 (Mo.App. 1980). On appeal, we accept as true all evidence and permissible inferences favorable to the Laws, the prevailing parties, and disregard any contradictory evidence. *Id.*

At trial, there was testimony that the City "interfered with" the Laws and their tenants and "scared off" tenants and potential purchasers by telling them the block structure's commercial use was limited to use as an auto repair shop, thereby influencing them not to purchase the property. Such action by the City regarding the block structure was improper in light of our interpretation of the zoning code in this opinion. We infer that the trial court found this evidence to be credible and that it constituted "unusual circumstances" justifying an award of attorney's fees. *David Ranken, Jr. Tech. Inst.*, 816 S.W.2d at 193.

Point denied.

## Conclusion

We affirm that portion of the trial court's judgment that declares that the house may only be used as a single family residence, in conformity with the land's R–2 zoning desig-

nation, and that the two buildings on the lot in question may have inconsistent uses, one residential and one commercial; and that portion of the judgment that awards $1,000 in attorney's fees to the Laws' attorney. We reverse and remand that portion of the trial court's declaratory judgment regarding the use of the block structure and direct the trial court to amend its judgment clarifying the permitted uses of the block structure consistent with this opinion.

All concur.